GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

THELMA ROBERTS, Defendant

Criminal No. 373-68

Municipal Court of the Virgin Islands
Div. of St. Croix
Frederiksted Jurisdiction

February —, 1969

JOSEPH, *Judge*

OPINION AND ORDER

Defendant Thelma Roberts has been accused of maintaining a public nuisance, a crime for which she can be sentenced under Virgin Islands law to imprisonment for up to one year. Pursuant to local practice and in apparent conformity with local Rule 16 of the District Court of the Virgin Islands, an attorney was appointed to represent her, after examination in open court and the later filing of an affidavit of financial status. The attorney, Mr. Britain H. Bryant of the St. Croix Bar, an experienced and highly qualified practitioner, filed a document which the court will treat as a motion to vacate the order appointing counsel. This motion came on for hearing and argument on December 3, 1968.

At the hearing Defendant Roberts gave substantially the same answers as made in her affidavit of financial status with two exceptions. She conceded she had not listed an automobile of old vintage which, at the time of hearing, was inoperable, and conceded also she had neglected to list her mortgage payment to the Chase Manhattan Bank. Counsel seeks to vacate the order principally on the ground that Defendant Roberts admits owning real estate valued at $25,000 and in which she has an apparent equity of $10,000. Defendant is employed as a policewoman by the Virgin Islands government and her monthly income is $418.00. It appears that her fixed obligations are approximately $194.00 per month. Defendant agreed at the hearing to pay $75.00 on the attorney's fee.

The question for decision is whether the court could validly assign counsel to represent a person financially situated as in the instant case.

The Virgin Islands has not remained isolated from the strong winds which have been buffeting legal

procedures in the United States. Indeed, under our 1957 Code and long before Gideon v. Wainright, if a defendant was indigent and unable to employ counsel our statute made it discretionary with the court, if the circumstances warranted it, to appoint counsel. After the Miranda decision the appointment of counsel was no longer discretionary but obligatory. When the Congress of the United States passed the Criminal Justice Act of 1964 our own District Court of the Virgin Islands directed the municipal courts to appoint counsel in serious misdemeanors if defendant is financially unable to obtain an adequate defense. Parenthetically, it is appropriate to observe that the court has the inherent power to appoint counsel to represent a defendant in a criminal case. Powell v. Alabama. However, it is recognized that these appointments are for the most part a burden on the local bar, but, nevertheless, an obligation appended to the privilege of practicing law. Before assigning counsel the court has the duty to satisfy itself that the financial position of the defendant dictates no other course.

As stated before, our 1957 Code authorized the court to act if defendant is indigent and unable to employ counsel. An amendment enacted in 1967 dispensed with the indigency requirement and the test then became one of being "financially unable to employ counsel."

What does "financially unable to employ counsel" mean?

The phrase has been lifted from the Criminal Justice Act of 1964. The paucity of standards to guide the judicial determination in this piece of legislation was bemoaned in an article co-authored by U.S. Judge James M. Carter of the Southern District of California and his law clerk. "The Criminal Justice Act of 1964." 36 F.R.D. 67. The article quoted a statement of the Attorney General's Committee on Poverty and the Administration of Criminal Justice, the so-called Allen Committee, that

" . . . [P]overty must be viewed as a relative concept with the consequence that the poverty of accused must be measured in each case by reference to the particular need or service under consideration."

The article reviewed several cases in which the courts had occasion to consider the inability to pay costs. In speaking on this subject the Supreme Court said in the case of Adkins v. E. J. Du Pont de Nemours Co. (1948) 335 U.S. 331, 339, 69 S.Ct. 35, 93 L.Ed. 43:

"We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs * * * and still be able to provide' himself and dependents 'with the necessities of life.' To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges."

The Adkins case quickly became the touchstone for several cases which followed. However, the authors concluded that a decision of the 9th Circuit ". . . best put its finger on the real crux of the problem." In a succinct per curiam opinion, Thiel v. Southern Pac. Co. (9 Cir. 1946) 159 F.2d 61, the court held:

"Petitioner is a man without legs. He is employed and to go to and from the place of employment he requires the use of an old automobile, which he owns. He is heavily in debt for his medical expenses. His earnings, plus the sales value of the automobile, could not warrant a saving of the payment of the reasonably estimated costs of appeal before many months have elapsed. In our opinion. he is a person who because of his poverty * * * is unable to pay the costs of his appeal."

Judge Carter and his co-author then wound up by supporting the Allen Committee test, viewing the term *financially unable to obtain counsel* as a relative concept that

128

must be measured in each case by reference to the particular need or service under consideration. In measuring, the court should inquire whether the defendant lacks the financial resources which would allow him to retain a competent lawyer at the time he needs one.

I find that the defendant in the instant case presently lacks the financial resources to retain a competent lawyer. The valuation placed on the defendant's home need not blind us to the true facts of the situation. It hardly requires citation to state that selling or mortgaging real estate is not something to be done on the spur of the moment. The fact that the defendant is earning a net pay of $418.00 a month pales into insignificance considering her fixed obligations of $194.00 a month and that three people are to be supported out of the remainder.

The order appointing counsel to appear for defendant will be modified to require her to pay at least $75.00 on the attorney's fee and, as so modified, it will stand.