**IN RE: JUSTIN K. HOLCOMBE, ESQ., Appellant**
**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff/Interested Party**
**v.**
**RALPH EDWARDS TITRE, JR., Defendant/Interested Party**

**IN RE: ROBERT L. KING, ESQ., Appellant**
**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff/Interested Party**
**v.**
**ROSEMARY SAUTER FRETT, Defendant/Interested Party**

S. Ct. Civil Nos. 2015-0007, 2015-0066

Supreme Court of the Virgin Islands

November 25, 2015

806

JUSTIN K. HOLCOMBE, ESQ., Dudley, Topper and Feuerzeig, St. Thomas, USVI, *Pro se.*

ROBERT L. KING, ESQ., The King Law Firm, St. Thomas, USVI, *Pro se.*

HON. ADAM G. CHRISTIAN, HON. DENISE M. FRANCOIS, Superior Court of the Virgin Islands, St. Thomas, USVI, *Nominal Respondents.*[1]

EDWARD L. BARRY, ESQ., St. Croix, USVI, *Attorney for Amicus Curiae Virgin Islands Bar Association.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(November 25, 2015)

HODGE, *Chief Justice.* Two members of the Virgin Islands Bar — Justin K. Holcombe, Esq., and Robert L. King, Esq. — appeal from Superior Court orders which appointed them to serve involuntarily as counsel to indigent criminal defendants. In the alternative, the attorneys also seek writs of mandamus and prohibition against the judges who issued the orders, the Honorable Adam G. Christian and the Honorable Denise M. Francois (collectively the "Nominal Respondents"). For the reasons that follow, we accept jurisdiction, vacate the respective appointment orders, and direct the Superior Court to appoint counsel for indigent defendants in a manner that complies with Virgin Islands law by

---

[1] On July 7, 2015, Paul L. Gimenez, Esq., filed a notice of appearance on behalf of the Honorable Adam G. Christian. However, in an October 21, 2015 filing, Gimenez clarified that he had filed a notice of appearance solely for purposes of electronically filing documents for Judge Christian, and that Judge Christian — like the other nominal respondent, the Honorable Denise M. Francois — intended to appear *pro se.*

March 1, 2016, failing which this Court may exercise its statutory and inherent powers to establish procedures for appointment of counsel to ensure that members of the Virgin Islands Bar are not systematically conscripted to provide indigent defense in violation of Virgin Islands statutory law.

## I. BACKGROUND

### A. The Holcombe Appointment

The facts of Holcombe's case are largely undisputed. On August 20, 2012, the People of the Virgin Islands charged Ralph Titre with numerous criminal offenses, including first-degree murder. Later that same day, Titre filed an affidavit of indigency, and the Superior Court appointed Judge Francois — at the time an attorney in private practice — as his counsel.[2]

On October 22, 2013, Judge Francois filed a motion to withdraw as counsel on grounds that she had been nominated and confirmed as a judge of the Superior Court, was scheduled to assume her judicial office on November 18, 2013, and could no longer engage in the practice of law. *See* 4 V.I.C. § 288(a) ("No justice, judge, clerk of court, deputy, assistant or other officer or employee of a court shall practice law during his continuance in office or be in partnership with a practicing attorney."). The Superior Court, in an October 28, 2013 order, granted the motion, and appointed Gabriel Major, Esq., as Titre's new counsel.

Almost a year later, on September 25, 2014, Major moved to withdraw as counsel, stating that he wished to relocate from the Virgin Islands to the United States mainland and to elect to become an inactive member of the Virgin Islands Bar, which would prohibit him from practicing law in the Virgin Islands. *See* V.I.S.CT.R. 206(b). The Superior Court issued an order on October 6, 2014, stating that "[a]ll attorneys practicing law in the U.S. Virgin Islands have a responsibility to represent indigent defendants in criminal cases," (J.A. 52), but nevertheless granted the motion because it concluded that a desire to switch to inactive status constituted good cause to permit withdrawal. On November 12, 2014, the Superior Court appointed Ravinger S. Nagi, Esq., to represent Titre.

---

[2] It is not clear from the record why the Superior Court appointed private counsel to represent Titre in the first instance rather than the Office of the Territorial Public Defender. *See* 5 V.I.C. § 3503(a).

On December 5, 2014, Nagi also moved to withdraw as counsel. In his motion, Nagi noted that less than two months earlier, another senior partner at his law firm — BoltNagi P.C. — had been appointed to serve involuntarily as counsel to an indigent defendant in a first-degree-murder case, and that several months earlier another attorney from his firm had also received an involuntary appointment. Nagi argued that requiring his firm to represent indigent defendants in three cases — two involving a first-degree-murder charge — was inequitable, and that such appointments "should be evenly distributed amongst active members of the V.I. Bar." (J.A. 58.) On December 30, 2014, the Superior Court entered two orders addressing Nagi's motion to withdraw. In the first of these two orders, the Superior Court held that Nagi was required to accept indigent appointments pursuant to 5 V.I.C. § 3503(a), but nevertheless granted his motion to withdraw as counsel. The second order then appointed Holcombe as counsel to Titre.

Holcombe filed a notice of appeal with this Court on January 23, 2015 — which this Court docketed as S. Ct. Civ. No. 2015-0007 — and an amended notice of appeal on January 30, 2015. In these documents, Holcombe maintained that the Superior Court committed error when it permitted Nagi to withdraw as counsel, and that the appointment process employed by the Superior Court violated 5 V.I.C. § 3503(a), the statute that it had cited in its December 30, 2014 orders. On February 2, 2015, Holcombe filed, with the Superior Court, a motion for it to stay its December 30, 2014 orders pending appeal.

This Court issued a briefing schedule, and on March 18, 2015, Holcombe filed a brief in support of the issues identified in his notices of appeal. Moreover, on April 9, 2015, the People filed a motion with this Court requesting permission to be excused from this appeal, stating that it took no position in the dispute relating to appointment of counsel. The next day, on April 10, 2015, Holcombe filed a motion for this Court to stay the December 30, 2014 orders, based on the Superior Court's failure to rule on the motion to stay for nearly two months. See V.I.S.Ct.R. 8(b). In an April 14, 2015 order, this Court directed Holcombe to respond to the People's motion, and to also serve his stay motion, brief, and other documents on Nagi, since the practical effect of granting a stay pending appeal would be to reinstate Nagi as Titre's counsel.

In his April 22, 2015 response, Holcombe noted that the People may have an interest in this appeal since it may implicate the interpretation of

5 V.I.C. § 3503(a), but took no express position as to whether the People's motion should be granted. However, Holcombe stated in his filing that the Superior Court clearly has an interest in the appeal and should be permitted to participate, and noted that this Court could provide the Superior Court with such an opportunity by converting his appeal to a petition for writ of mandamus. *See* V.I.S.CT.R. 13(b) (providing that a judge who is the subject of a mandamus petition may be permitted to file an answer). On April 23, 2015, Nagi filed a notice with this Court stating that he did not wish to participate in this appeal.

That same day, the Virgin Islands Bar Association filed a motion to appear as an *amicus curiae* and file a brief in support of Holcombe's position, in which it represented that it could file a proposed brief within 45 days. Like Holcombe, the Bar Association suggested that this Court permit a representative of the Superior Court to file a brief in this matter in light of the People's request to be excused from participating. Notably, the Bar Association cited to case law to support the proposition that both it and the Superior Court could appear as *amicus curiae* in this appeal, and served its motion on the Presiding Judge of the Superior Court.

On May 27, 2015, Holcombe notified this Court that the Superior Court issued a ruling on his stay motion on May 18, 2015. In its order, the Superior Court denied the motion for a stay, on grounds that granting the stay would deprive Titre of an attorney while the appeal was pending.[3] Nevertheless, in the same order, the Superior Court concluded that this situation had made it difficult for Holcombe to defend Titre, and that appointment of new counsel was necessary to preserve Titre's Sixth Amendment right to effective assistance of counsel. Consequently, the Superior Court relieved Holcombe of the representation, and in a May 20, 2015 order, appointed Andrew L. Capdeville, Esq., as Titre's new counsel. In his filing with this Court, Holcombe conceded that his motion for a stay pending appeal had been rendered moot by the Superior Court's actions, but contended that this claim with regard to the Superior Court's

---

[3] It is not clear why the Superior Court concluded that staying the December 30, 2014 orders — which simultaneously granted Nagi's motion to withdraw as counsel and appointed Holcombe as Nagi's successor — would have the effect of leaving Titre without an attorney, as opposed to requiring Nagi to continue representing Titre until the matter was resolved. *See James v. Faust*, S. Ct. Civ. No. 2015-0070, 2015 V.I. Supreme LEXIS 24, at *6 (V.I. Aug. 7, 2015) (unpublished) (noting that the purpose of a stay pending appeal is to preserve the status quo).

compliance with section 3503(a) was not moot and should proceed to a decision on the merits.

This Court, in a June 3, 2015 order, denied Holcombe's motion as moot, and granted the requests of the People and Nagi to not participate in this appeal. The June 3, 2015 order further provided that this Court would consider Holcombe's request to not dismiss this matter as moot concurrently with the merits. On July 1, 2015, this Court, noting that the Virgin Islands Bar Association had not filed an *amicus curiae* brief within its self-imposed deadline, required it to show cause as to why its motion to appear as an *amicus curiae* should not be denied. Later that same day, the Bar Association advised this Court that it still desired to appear as an *amicus curiae*, and requested a minimum of 20 additional days to file its *amicus curiae* brief.

In another order issued on July 1, 2015, this Court granted the Bar Association's request for an extension of time. In the same order, this Court noted that although it had intended to consider the mootness issue concurrently with the merits, the vast majority of the merits brief that Holcombe had filed on March 18, 2015, related to issues other than the Superior Court's compliance with section 3503, such as whether good cause existed to permit Nagi to withdraw as counsel. Additionally, this Court recognized that Holcombe, in his April 22, 2015 filing, had raised the possibility of converting his appeal to an original proceeding for mandamus in order to provide the Superior Court with a chance to respond. Consequently, the July 1, 2015 order established a new briefing schedule, in which (1) Holcombe could file a supplemental brief on or before July 22, 2015, addressing the issues he believed this Court should still consider, including any potential claim for mandamus relief, (2) the Bar Association could file its *amicus curiae* brief on or before July 29, 2015, (3) Judge Christian could file an answer pursuant to Supreme Court Rule 13(b) on or before August 24, 2015, and (4) Holcombe could file a reply to the briefs filed by the Bar Association and Judge Christian no later than September 8, 2015. Holcombe, the Bar Association, and Judge Christian all timely filed briefs in accordance with this briefing schedule.

### B. The King Appointment

The facts of King's case are also largely undisputed. On February 26, 2014, the People charged Rosemary Sauter Frett with numerous crimes, including a violation of the Criminally Influenced and Corrupt

811

Organizations Act, 14 V.I.C. § 600 *et seq.*, embezzlement, and obtaining money by false pretenses. When Sauter made her initial appearance on April 4, 2014, the Superior Court appointed the Office of Territorial Public Defender as her counsel. Nevertheless, on April 10, 2014, Vincent Colianni, II, Esq., voluntarily entered an appearance as her retained counsel.

Nearly six months later, on September 29, 2014, Colianni filed a motion to withdraw as Sauter's counsel, on grounds that Sauter could no longer afford to pay him. The Superior Court granted the motion on October 3, 2014, and on October 23, 2014, appointed Leigh Goldman, Esq., as Sauter's new counsel.[4] However, the very next day, Goldman also moved to withdraw because he was assisting other attorneys in an effort to file a civil action against Sauter. The Superior Court granted the motion on October 27, 2014, and appointed Samuel Hall, Esq., as successor counsel. But on October 28, 2014, Hall also filed a motion to withdraw because he represented another criminal defendant in a case where Sauter served as foreperson of the jury, and a new trial had been granted because Sauter apparently relied on extrajudicial information to influence the jury. The Superior Court granted Hall's motion on October 31, 2014, and appointed Stefan Herpal, Esq., as Sauter's new counsel. However, he also successfully moved to withdraw as counsel, as did the next attorney the Superior Court appointed, Steve Hogroian, Esq.

After granting Hogroian permission to withdraw, the Superior Court appointed Helen Kim, Esq., as Sauter's attorney on November 25, 2014. Over the next several months, Kim represented Sauter in the criminal action. However, on June 11, 2015, Sauter filed a *pro se* motion with the Superior Court, captioned as a "Motion for Request for Appointment of An Attorney Under Title 5, Section 3503 Which Requires a Panel of Criminal Attorneys." In the motion, Sauter argued that section 3503 required the Superior Court to appoint counsel from a panel of criminal attorneys, and alleged that Kim lacked sufficient criminal experience to represent her. On that same day, Sauter filed a motion with this Court for permission to join Holcombe's appeal, contending that the Superior Court

---

[4] As in the Titre case, it is not clear from the record why the Superior Court appointed Goldman to represent Sauther rather than the Office of the Territorial Public Defender, particularly given that the Public Defender had represented her at her initial appearance. *See* 5 V.I.C. § 3503(a).

had "ignore[d]" section 3503's panel requirement and that her case could be affected by this Court's decision. On June 16, 2015, Kim filed a motion to withdraw as counsel with the Superior Court, premised on the fact that Sauter had questioned her qualifications.

The Superior Court held a hearing on Sauter and Kim's motions on June 30, 2015. At the hearing, the Superior Court orally directed Sauter to submit a list of three attorneys, from which the Superior Court would appoint one to represent her. On July 2, 2015, Sauter submitted a list requesting that she be represented by either Gordon Rhea, Esq., or Tee Persad, Esq. — neither of whom reside in the Virgin Islands — or King. The Superior Court, in a July 9, 2015 order, permitted Kim to withdraw as counsel, and appointed King as Sauter's new attorney.

King filed a notice of appeal with this Court on July 27, 2015, docketed as S. Ct. Civ. No. 2015-0066. In his notice of appeal, King identified nine issues, all related to the Superior Court's decision to appoint him to serve involuntarily as Sauter's counsel. The Court issued a briefing schedule, and King filed his principal brief on September 7, 2015. In his brief, King narrowed his claims to only two issues, asserting that the Superior Court's appointment procedure was contrary to section 3503, and that in the alternative, Kim failed to provide good cause for withdrawing as counsel. Additionally, King requested that if this Court concluded that it lacked jurisdiction over his appeal, that it treat his brief as a request for a writ of prohibition preventing the judge presiding over the underlying case — Judge Francois — from enforcing the July 9, 2015 order, and a request for a writ of mandamus "requiring the Superior Court to either establish or that this Court establish rules regarding the appointment of counsel to indigent defendants that are fair, equitable, and applied in an evenhanded manner; and . . . follow the letter and spirit of 5 V.I.C. § 3503(a)." (King Br. 15.) In addition to making his own arguments, King also requests in his brief that this Court accept all of Holcombe's arguments as his own.

This Court, in a September 15, 2015 order, provided Judge Francois with an opportunity to file an answer in light of King's request that this Court issue writs of prohibition and mandamus. On September 29, 2015, Judge Francois filed an answer, which questioned whether King could immediately appeal the July 9, 2015 appointment order, contended that the requirements for mandamus or prohibition had not been satisfied, and argued that in any event the appointment procedure utilized by the Superior Court comports with section 3503. King did not file a response

813

to Judge Francois's answer with this Court. Moreover, as in the *Holcombe* case, the People filed a "Motion To Be Excused From Participating in the Instant Appeal" on October 2, 2015, and a "Notice of Nonparticipation" on October 7, 2015, which collectively stated that the Executive Branch did not have an interest in the matter. Shortly thereafter, on October 13, 2015, Sauter filed a *pro se* brief with this Court. Consequently, this Court, in an October 22, 2015 order, denied Sauter's motion to intervene in the *Holcombe* case as moot.

On October 21, 2015, and November 4, 2015, Judge Christian and Judge Francois respectively moved to be excused from participating in oral arguments in the respective cases in which they had been named nominal respondents. This Court granted both motions, for Supreme Court Rule 13(b) provides that "[i]f the judge named as nominal respondent does not desire to appear in the proceeding, the judge may so advise the Clerk of the Supreme Court and all parties by letter, but the petition shall not thereby be taken as admitted." This Court heard arguments from the remaining parties in the *King* and *Holcombe* cases as part of a consolidated oral argument on November 10, 2015.

## II. DISCUSSION

The gravamen of Holcombe and King's appeals, and their requests for mandamus relief, is that the Superior Court's practice of involuntarily conscripting attorneys to represent indigent defendants in criminal cases violates 5 V.I.C. § 3503(a), in that the statute contemplates that the Superior Court establish and maintain a panel of attorneys who have volunteered for the purpose of representing indigent defendants and to appoint no more than 15 percent of all indigent appointments from the panel. However, prior to reaching the merits, we must consider our appellate and mandamus jurisdiction, as well as the Nominal Respondents' contention that this matter has become moot or otherwise not justiciable.

### A. Jurisdiction

■ Ordinarily, this Court may only hear an appeal from a final judgment, which is "one that ends the litigation on the merits and leaves nothing to do but execute the judgment." *Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 691 (V.I. 2010) (quoting *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008)).

Because the underlying criminal proceedings against Titre and Sauter remain ongoing, King and Holcombe's appeals are not from a final judgment. Likewise, while the Virgin Islands Code sets forth several classes of permissible interlocutory appeals, *see, e.g.*, 4 V.I.C. § 33(b)-(d), the Superior Court's December 30, 2014 and July 9, 2015 orders do not fall within any of those categories. *Cf. Enrietto v. Rogers Townsend & Thomas PC*, 49 V.I. 311, 316-17 (V.I. 2008) (adopting the collateral order doctrine for the Virgin Islands).

Nevertheless, in their respective appellate briefs, Holcombe and King both maintain that this Court may exercise jurisdiction over this appeal under the collateral order doctrine. This judicially-created exception to the final judgment rule applies to "a small class of prejudgment orders which finally determine claims of right separable from, and collateral to, rights asserted in the action, and are too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Beachside Assocs. v. Fishman*, 53 V.I. 700, 709 (V.I. 2010) (quoting *Enrietto*, 49 V.I. at 319) (internal quotation marks omitted). "To fall within the exception, an order must conclusively determine the disputed question; resolve an important issue completely separate from the merits of the action; and must be effectively unreviewable on appeal from a final judgment." *Hard Rock Café v. Lee*, 54 V.I. 622, 628 (V.I. 2011) (quoting *Gov't of the V.I. v. Crooke*, 54 V.I. 237, 250-51 (V.I. 2010)) (ellipses omitted).

We agree that the first two factors of the collateral order doctrine analysis are easily satisfied. As to Holcombe, the December 30, 2014 orders conclusively determined the question, since the Superior Court held that "[a]ll attorneys practicing law in the U.S. Virgin Islands have a responsibility to represent indigent defendants in criminal cases," (J.A. 52), and interpreted 5 V.I.C. § 3503(a) as requiring all private attorneys to accept involuntary appointments to represent indigent defendants. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375-76, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981) (holding that orders relating to whether an attorney should represent a client satisfy the first factor of the collateral order doctrine). The same is true with respect to King's appeal, given that Sauter, through her *pro se* motion, expressly raised the issue of whether the Superior Court's appointment process complied with the panel

815

requirement imposed by section 3503, and the Superior Court responded by appointing King to serve involuntarily as counsel.[5]

■ The question of what law governs appointment of counsel for indigent defendants — and by extension, whether a particular lawyer should be forced to represent a party against his or her will — is likewise wholly unrelated to the merits of the underlying proceedings in these cases, i.e., whether Titre is guilty of first-degree murder or Sauter is guilty of embezzlement or the other charged offenses. *See, e.g., Abney v. United States*, 431 U.S. 651, 660, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977) (holding second collateral order doctrine factor is satisfied in a criminal case when the issue is "completely independent of [the defendant's] guilt or innocence"); *Erie Molded Plastics, Inc. v. Nogah, LLC*, 520 Fed. Appx. 82, 84 (3d Cir. 2013) ("[W]hether [an attorney] must continue representing [the party] is an important issue that is unrelated to the merits of the underlying breach-of-contract action."); *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999) ("[W]hether [the attorney] must continue to serve as appellee's counsel is . . . an issue completely separate from the merits of the underlying action."). Consequently, the second collateral order factor has also been satisfied.

■ The third factor, however, poses a more difficult question. As noted above, to qualify for an immediate appeal under the collateral order doctrine, the order "must be effectively unreviewable on appeal *from a final judgment.*" *Hard Rock Cafe*, 54 V.I. at 628 (emphasis added). Although King simply states that an appointment order cannot be appealed at the conclusion of a criminal case, Holcombe elaborates that it is impractical to expect a court-appointed attorney to wait until the conclusion of the underlying criminal case to challenge the Superior Court's appointment process, since regardless of whether the defendant is

---

[5] Previously, this Court has held that the Superior Court possesses the authority to reconsider any previous ruling prior to entry of final judgment. *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 621-22 (V.I. 2012). However, the fact that an interlocutory ruling is potentially subject to modification does not defeat the first factor of the collateral order doctrine, since the relevant inquiry is whether the order, as issued, resolves the issue. *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 174 (5th Cir. 2009) ("The mere power to revisit an order, however, is insufficient to preclude a finding of conclusivity."). Consequently, for purposes of the first factor, it is immaterial that neither Holcombe nor King filed motions to withdraw as counsel, but instead immediately appealed their respective appointment orders to this Court, given that the Superior Court's reasoning is readily apparent from the orders that it did issue.

convicted or acquitted, "the attorney would have already fulfilled his/her obligation" and "the indigent defendant would have received services from an attorney who is not on the statutorily mandated panel." (Holcombe Supp. Br. 6.)

██ We agree that a court-appointed attorney who waits until the defendant is convicted or acquitted is unlikely to receive meaningful redress on appeal.[6] *See Mathews v. Eldridge*, 424 U.S. 319, 331 n.11, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (finality requirement should "be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered"). However, Holcombe and King fail to acknowledge that there is another method through which an attorney appointed to involuntarily serve as counsel may obtain an appealable final judgment without providing any services to the indigent defendant: refusing to comply with the appointment order and, after being held in contempt, appealing from the contempt sanction. *In re Rogers*, 56 V.I. 325, 333 n.21, 334 (V.I. 2012) ("[W]e conclude that an order finding contempt against an attorney who is not a party to the underlying litigation is immediately appealable."); *see also Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 111, 130 S. Ct. 599, 175 L. Ed. 2d 458 (2009) (holding that the third factor for the collateral order doctrine is not satisfied if the non-party can stand in contempt and appeal from that ruling). In fact, this Court has already held that an attorney who desired to withdraw as counsel on conflict-of-interest grounds could not appeal the denial of the motion under the collateral order doctrine because the attorney "could refuse to comply with the trial court's order and, after being held in contempt, appeal the contempt sanction." *In re Drue*, 57 V.I. 517, 521 (V.I. 2012).

██ Nevertheless, we conclude that the failure of Holcombe and King to stand in contempt prior to bringing their appeals does not defeat the

---

[6] This is particularly true given this Court's recent amendments to Supreme Court Rule 210, which now provides that

> After the filing of a notice of appeal with the Supreme Court, any attorney previously appointed by the Superior Court, other than the Office of the Territorial Public Defender, may request that the Supreme Court relieve him or her of the representation and instead appoint, as appellate counsel, the Office of the Public Defender or a member of the panel established pursuant to Supreme Court Rule 210.1(a).

V.I.S.Ct.R. 210.3(a)(2). Consequently, an attorney who was appointed by the Superior Court to serve involuntarily as counsel could seek relief from continuing the representation on appeal without challenging the legality of the original appointment.

third collateral order factor. In *Drue*, retained counsel sought to withdraw her representation of a criminal defendant because she believed an actual conflict of interest was present that, if not rectified through her withdrawal, would violate the defendant's Sixth Amendment right to unconflicted counsel. 57 V.I. at 520. Consequently, the order in *Drue* was of the type that "primarily affects the interests of the underlying litigants." *Whiting*, 187 F.3d at 320. Several courts, however, have recognized that the third collateral order doctrine factor will be satisfied when the interest being vindicated on appeal belongs to the attorney rather than the client, such as when an attorney moves to withdraw on grounds that the client refuses to pay. *See, e.g., Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 310 F.3d 537, 539 (7th Cir. 2002) ("Because an order compelling a lawyer to work without prospect of compensation is unrelated to the merits of the dispute, cannot be rectified at the end of the case, and has a potential to cause significant hardship, . . . the order is immediately appealable as a collateral order."); *Lieberman v. Polytop Corp.*, 2 Fed. Appx. 37, 38-39 (1st Cir. 2001) ("An order requiring an attorney to continue representing a client . . . without compensation may subject the attorney to irreparable harm and amounts to an order of specific performance."); *Whiting*, 187 F.3d at 320 ("Unlike an order granting or denying a motion to disqualify an attorney, which primarily affects the interests of the underlying litigants, an order denying counsel's motion to withdraw primarily affects the counsel forced to continue representing a client against his or her wishes. . . . The injury to a counsel forced to represent a client against his will is similarly irreparable, and the district court's decision would be effectively unreviewable upon final judgment." (citation omitted)); *In re Franke*, 207 Md. App. 679, 55 A.3d 713, 719 (2012) (denial of motion to withdraw premised on nonpayment of fees is immediately appealable as a collateral order "because to defer an appellate challenge to such a ruling until final judgment essentially renders it moot on arrival"). The reasoning behind these decisions applies with even greater weight to cases where attorneys have been conscripted to provide representation against their will, given that "the Takings Clause of the Fifth Amendment to the United States Constitution may be implicated when a court involuntarily appoints an attorney to represent an indigent criminal defendant." *In re Joseph*, S. Ct. Civ. No. 2013-0015, 2013 V.I. Supreme LEXIS 14, at *13 (V.I. Apr. 5, 2013) (unpublished). Accordingly, we conclude that we possess appellate jurisdiction over this appeal under the collateral order doctrine.

■■■ Holcombe and King also contend that this Court may exercise jurisdiction under 4 V.I.C. § 32(b), which vests this Court with jurisdiction over original proceedings for mandamus, prohibition, and other extraordinary writs. A writ of mandamus is a drastic remedy, the purpose of which is to mandate the respondent to perform a particular action. *In re People of the V.I.*, 55 V.I. 851, 856 n.4 (V.I. 2011). In his appellate brief, Holcombe maintains that mandamus relief is appropriate because he desires a writ "requiring the Superior Court to (1) implement Section 3503(a) by creating a voluntary panel of qualified private attorneys, and; (2) establish in each order appointing private counsel that the court has not exceeded the fifteen percent (15%) limitation." (Holcombe Supp. Br. 15.) Similarly, King desires a writ prohibiting Judge Francois from enforcing the July 9, 2015 order, and a writ of mandamus "requiring the Superior Court to either establish or that this Court establish rules regarding the appointment of counsel to indigent defendants that are fair, equitable, and applied in an evenhanded manner; and . . . follow the letter and spirit of 5 V.I.C. § 3503(a)." (King Br. 15.) Because Holcombe and King are also seeking a writ directing the Superior Court to take these measures, their actions also constitute petitions for a writ of mandamus which we have jurisdiction to consider under section 32(b).

## B. Mootness

■■■ The Nominal Respondents also seek dismissal of these actions on justiciability grounds. In his response to Holcombe, Judge Christian contends that his entire case should be dismissed as moot because Holcombe has been relieved of his court-appointed representation of Titre.[7]

■■■ We agree with Holcombe that his action is not moot because the underlying question — what system governs appointment of counsel to indigent defendants in proceedings before the Superior Court — is an

---

[7] "[T]he mootness doctrine in the Virgin Islands is a non-jurisdictional claims-processing rule that has been incorporated into Virgin Islands law only as a matter of judicial policy." *Mapp v. Fawkes*, 61 V.I. 521, 530 (V.I. 2014) (citing *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (V.I. 2012), and *Vazquez v. Vazquez*, 54 V.I. 485, 489 n.1 (V.I. 2010)). Consequently, this Court may consider an otherwise moot case at its discretion. *Haynes v. Ottley*, 61 V.I. 547, 558 (V.I. 2014) (citing *Benjamin*, 56 V.I. at 568 n.6).

important issue that is capable of repetition and yet may continuously evade review. *Haynes v. Ottley*, 61 V.I. 547, 559 (V.I. 2014); *see also Joseph*, 2013 V.I. Supreme LEXIS 14, at *8-9 (rejecting argument that mandamus petition challenging system of compensating court-appointed counsel is moot because petitioner had been paid); *State ex rel. Missouri Public Defender Comm'n v. Waters*, 370 S.W.3d 592, 603-04 (Mo. 2012) (en banc) (holding appeal from order appointing the public defender when the office maintained the appointment was unlawful does not become moot due to the defendant's guilty plea because it "is one of general public interest and importance, is capable of repetition and may evade review if not decided in this proceeding"). As Holcombe notes in his supplemental brief, the fact that the Superior Court relieved him of his obligation to represent Titre does not prevent him from being appointed by the Superior Court to serve involuntarily as counsel at some future date.

Moreover, we note that the Superior Court did not relieve Holcombe until approximately two months after he filed his original appellate brief and one month after the People indicated that it did not wish to participate in this appeal, and thus this appeal had already been "fully developed" and ripe for consideration by this Court by the time the Superior Court issued its May 18, 2015 order.[8] *Haynes*, 61 V.I. at 560. And as the Virgin Islands Bar Association notes in its *amicus curiae* brief, the system for appointing counsel in the Superior Court is a question of profound public importance that has wide-ranging implications for the rights of both criminal defendants and Virgin Islands attorneys,[9] which could easily be resolved through a single decision from this Court addressing "a focused, legal issue" that would govern future cases. *Id.* Thus, we conclude that it would be inappropriate to dismiss Holcombe's action as moot. *See*

---

[8] In fact, given that Holcombe had already appealed the December 30, 2014 orders to this Court, it is questionable whether the Superior Court possessed jurisdiction to interfere with the pending appeal by appointing a different attorney to represent Titre — particularly when the appeal had already become fully briefed. *Walters v. Walters*, 60 V.I. 768, 782 (V.I. 2014) (citing *In re Rogers*, 56 V.I. 325, 342 (V.I. 2012)).

[9] For instance, the Bar Association argues that the Superior Court's practice of appointing attorneys to involuntarily represent indigent criminal defendants, without regard to their experience or even whether they desire the appointment, not only implicates the defendant's right to effective representation of counsel under the Sixth Amendment, but places many attorneys — such as those who have a purely transactional practice — in an ethical quandary, since the Virgin Islands Rules of Professional Conduct provide that it is an ethical violation to accept a case that exceeds his or her capabilities. *See, e.g.*, V.I.S.Ct.R. 211.1.1.

*Sacandy v. Walther*, 262 Ga. 11, 413 S.E.2d 727, 729 n.3 (1992) (reaching merits of attorney's challenge to indigent defense system, even though attorney was permitted to withdraw as counsel, because "of the significant public interest in this challenge to the validity of an indigent defense program").

## C. Supervisory Writs of Mandamus and Prohibition

We now turn to the Nominal Respondents' challenges to the requests for writs of mandamus and prohibition. Given our conclusion that we possess appellate jurisdiction over this appeal under the collateral order doctrine, it may initially appear unnecessary for us to also consider Holcombe and King's request for a writ of mandamus or prohibition. However, because Holcombe and King are requesting more extensive relief through a writ of mandamus than they could obtain through an interlocutory appeal under the collateral order doctrine — in that they are seeking a writ directing the Superior Court to establish procedures for the appointment of counsel going forward — we must also address the merits of their mandamus petition.

To obtain a writ of mandamus or prohibition, a party typically must establish that his right to the writ is clear and indisputable, that he has no other adequate means to attain the desired relief, and that the writ is appropriate under the circumstances. *In re LeBlanc*, 49 V.I. 508, 516 (V.I. 2008). But in this case, Holcombe cites to several cases in which appellate courts have issued "supervisory" writs of mandamus on issues that may be applicable to multiple judges, or to an entire court, in order to eliminate problematic practices in the trial court — even where traditional requirements of mandamus have not been strictly satisfied. *See, e.g., In re School Asbestos Litigation*, 977 F.2d 764, 773 (3d Cir. 1992); *In re McBryde*, 117 F.3d 208, 223 (5th Cir. 1997); *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 524, 166 U.S. App. D.C. 184 (D.C. Cir. 1975).

In the federal system, federal appellate courts have the authority to issue supervisory writs to the district courts within their appellate jurisdiction under the All Writs Act, 28 U.S.C. § 1651. *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259-60, 77 S. Ct. 309, 1 L. Ed. 2d 290 (1957); 28 U.S.C. § 1651 ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."). Appellate courts use supervisory writs to prevent a "clear abuse[s]

of discretion, or conduct amounting to usurpation of the judicial power," *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 308, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989) (citations, alterations, and internal quotation marks omitted), in addition to "practices posing severe threats to the proper functioning of the judicial process." *McBryde*, 117 F.3d at 223 (citing *La Buy*, 352 U.S. 249); *see also Keiffe v. La Salle Realty Co.*, 163 La. 824, 112 So. 799, 800 (1927) ("In the exercise of its supervisory powers, the court is concerned in the prevention of abuses or illegal acts.").

▌▌ Like the federal All Writs Act, section 32(b) of title 4 of the Virgin Islands Code provides broadly that this Court has "all inherent powers, including the power to issue all writs necessary to the complete exercise of its duties and jurisdiction under the laws of the Virgin Islands." 4 V.I.C. § 32(b). "[W]hen the Virgin Islands Legislature models a local statute after a statute adopted by another jurisdiction, 'judicial decisions interpreting [that] statute shall assist this Court in interpreting the same clause found in our local statute,' " and therefore the federal authority relying on the All Writs Act to issue supervisory writs is particularly persuasive in our interpretation of section 32(b). *Haynes*, 61 V.I. at 568 (quoting *People v. Pratt*, 50 V.I. 318, 322 (V.I. 2008)). Despite this, Judge Christian argues that mandamus is not appropriate here because "the broad and unprecedented relief against other parties" — the entire Superior Court — "cannot form the basis for the issuance of a writ given its personal character." (Christian Br. 2.) Similarly, Judge Francois maintains that she is "not the proper party" to accomplish King's request for the Superior Court to create the attorney panel mandated by section 3503. (Francois Br. 3.) Although not explicitly stated in either filing, it appears that the Nominal Respondents may believe that either the Presiding Judge of the Superior Court, or the Superior Court as an entity, is the appropriate respondent in a mandamus or prohibition action seeking to change the method through which the Superior Court appoints counsel to indigent defendants. But as we have already explained, "our jurisdiction [under section 32(b)] is not limited to issuing writs of mandamus to judges of the Superior Court."[10] *In re FirstBank Puerto*

---

[10] We further question the Nominal Respondents' reliance on our *Fleming* decision for the broad proposition that mandamus proceedings are always personal to the judge. Although this Court cited to a Texas Court of Appeals decision for that proposition, *see In re Roseland Oil & Gas, Inc.*, 68 S.W.3d 784, 786 (Tex. App. 2001), this was done in the context of re-

*Rico*, S. Ct. Civ. No. 2008-0051, 2008 V.I. Supreme LEXIS 43, *5 n.1 (V.I. Oct. 3, 2008) (unpublished).

 Further, it is well established among state courts of last resort that "[t]he grant of the appellate jurisdiction from its very nature implies . . . all the instrumentalities necessary to make it effective." *State v. Dist. Court of First Judicial Dist.*, 24 Mont. 539, 63 P. 395, 398 (1900). "One of the essential attributes of appellate jurisdiction, and one of the inherent powers of an appellate court, is the right to make use of all writs known to the common law, and, if necessary, to invent new writs or proceedings, in order to suitably exercise the jurisdiction conferred." *Dobson v. Westheimer*, 5 Wyo. 34, 36 P. 626 (1894) (citing *Wheeler v. N. Colorado Irr. Co.*, 9 Colo. 248, 11 P. 103, 104 (1886), and *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60 (1803)). An appellate court's "exercise of supervisory power . . . is . . . recognized by the common law," *State v. Thomas*, 301 Mo. 603, 256 S.W. 1028, 1029 (1923), and "the jurisdiction inherent in [a court of last resort] is fully adequate to authorize the issuance of an appropriate order . . . in the exercise of its supervisory jurisdiction." *Brokaw Hosp. v. Circuit Court of McLean Cnty.*, 52 Ill. 2d 182, 287 N.E.2d 472, 475 (1972); *see also In re People of the V.I.*, 55 V.I. at 858 n.5 (recognizing this Court's "inherent supervisory authority over the Superior Court"); 4 V.I.C. § 31(d)(3) ("The Chief Justice has general oversight of the judicial branch of the Government of the Virgin

---

jecting an argument that Superior Court Rule 14 represented an adequate alternate form of relief, given that the petitioner in the *Fleming* case did not request that the case be reassigned to a different judge, "expressly identifie[d] the Nominal Respondent by name, and request[ed] that this Court issue a writ of mandamus compelling the Nominal Respondent to either settle the above-referenced civil matter . . . or proceed to trial." *Fleming*, 56 V.I. at 468 (internal quotation marks omitted). Similarly, the only other time we have cited the pertinent language from *Fleming* was in a case where this Court questioned whether it could impute delays attributable to a prior judge onto a successor judge who had only recently been assigned to the case. *In re Rivera-Moreno*, S. Ct. Civ. No. 2013-0046, 2013 V.I. Supreme LEXIS 24, at *6 (V.I. June 19, 2013) (unpublished). The Texas case law that this Court relied on in *Fleming* also does not stand for the broad proposition relied upon by the Nominal Respondents. The Texas court's decision in *Roseland Oil & Gas*, 68 S.W.3d at 786, relied on two prior decisions — *State v. Olsen*, 163 Tex. 449, 360 S.W.2d 402, 403 (1962), and *Jampole v. Touchy*, 673 S.W.2d 569, 572 (1984) — where the Texas Supreme Court held that although mandamus is ordinarily personal to the judge, a mandamus action may nevertheless proceed against a successor judge — without reargument — if the successor judge also fails to grant the relief requested by the petitioner. Thus, our *Fleming* precedent, as well as the Texas decisions it relied upon, merely establishes a default rule that governs instances where a petitioner seeks relief against a particular judicial officer.

Islands."). In light of this authority, this Court undoubtedly has the statutory and inherent authority to issue supervisory writs to the entire Superior Court when necessary to ensure the "proper functioning of the judicial process." *McBryde*, 117 F.3d at 223.

 In their respective answers, the Nominal Respondents identify other potential grounds for challenging the request for mandamus relief. As to Holcombe, Judge Christian asserts that Holcombe has another remedy available to him, in the form of an action for declaratory judgment under 5 V.I.C. §§ 1261-72, thus asserting that the traditional requirements of mandamus are not satisfied here. With respect to King, Judge Francois maintains that he has never sought an administrative remedy from the Presiding Judge of the Superior Court under Superior Court Rule 14.[11] But in cases where a supervisory writ of mandamus is requested, "application of the 'black letter' rules for when mandamus will be issued has not been unwavering," *School Asbestos Litigation*, 977 F.2d at 773 (quoting *Maloney v. Plunkett*, 854 F.2d 152, 155 (7th Cir. 1988)), because "[s]ome flexibility is required if the extraordinary writ is to remain available for extraordinary situations." *Id.* Instead, courts have held that, regardless of the stringent requirements of traditional mandamus relief, supervisory writs are appropriate "when the appellate court is convinced that resolution of an important, undecided issue will forestall future error in [the trial court], eliminate uncertainty and add importantly to the efficient administration of justice." *Colonial Times, Inc.*, 509 F.2d at 524 (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 111, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964)); *id.* at 524 n.22 (collecting cases). As an exercise of this Court's supervisory authority, "mandamus is a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their

---

[11] Superior Court Rule 14 provides, in its entirety, as follows:

Any aggrieved litigant or attorney may petition the Presiding Judge in writing for administrative resolution of any matter involving observance by judges or other judicial personnel of the Court's Rules of Practice and Procedure or the prompt dispatch of the Court's business. The petition may be in the form of a written request for relief setting forth the name of the case, the case number, the judge to which assigned, if any, and a brief description of the grievance. Upon receipt of the petition, the Presiding Judge shall review the matter and take such administrative action as is deemed appropriate. All interested parties shall be notified in writing of the decision of the Presiding Judge.

SUPER. CT. R. 14.

administration of the public business, notwithstanding the fact that there also exists an adequate remedy at law." *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816, 828-29 (1987); *Mobil Oil Corp. v. McHenry*, 200 Kan. 211, 436 P.2d 982, 1004-05 (1968). Thus, in the context of a supervisory writ, the availability of alternate legal remedies will not necessarily defeat a claim for mandamus relief as it would in a traditional mandamus proceeding.[12]

 This is particularly true when there is a substantial allegation that a trial court has usurped a power that belongs to a higher court or another branch of government. *See Schlagenhauf*, 379 U.S. at 110-11 (holding federal courts of appeals may, through supervisory writ of mandamus, resolve "an issue of first impression" that involves "a substantial allegation of usurpation of power"); *United States v. Christian*, 660 F.2d 892, 896-97 (3d Cir. 1981) ("The present case involves such a systemic problem. . . . The issue of discretionary authority is not presented, for the parties agree that the district court's power was either granted or forbidden. The case at hand thus presents an opportunity for mandamus review to fulfill its 'vital corrective and didactic function.' " (quoting *Will v. United States*, 389 U.S. 90, 107, 88 S. Ct. 269, 19 L. Ed. 2d 305 (1967))). In this case, Holcombe and King not only allege that the Superior Court has infringed on the power of the Legislature by failing to comply with 5 V.I.C. § 3503(a), but also the power of this Court, which possesses the exclusive power to regulate the Virgin Islands Bar. 4 V.I.C. § 32(e). The Supreme Court of Kansas, in a similar case where attorneys alleged that a trial court had failed to comply with applicable statutes governing appointment of counsel to indigent defendants, concluded that

---

[12] Although we need not reach this issue given our holding that the potential for bringing a separate lawsuit does not preclude mandamus relief in this instance, we question the Nominal Respondents' contentions that a declaratory judgment action or a petition to the Presiding Judge could serve as a mechanism to challenge the appointment orders. At least one court has held that "a declaratory judgment action should only be maintained where it would serve a useful purpose" and that it would be inappropriate to bring a declaratory judgment action as a *de facto* attempt to challenge an order issued in a different case. *Sandoval v. State ex rel. Wyoming Dep't of Transp.*, 2012 WY 160, 291 P.3d 290, 296 (2012). Additionally, this Court has already held that the Superior Court Rule 14 procedure is "limit[ed] . . . solely 'to re-solv[ing] administrative problems, not the power to review rulings of the trial court on legal questions.' " *In re Fleming*, 56 V.I. 460, 468 (V.I. 2012) (quoting *Gov't of the V.I. v. Thomas*, 341 F. Supp. 2d 531, 534 (D.V.I. App. Div. 2004)).

mandamus constituted a proper remedy because the trial court's compliance with the pertinent statutes constituted a nondiscretionary duty:

> Determining whether or not an accused is indigent, whether an attorney is competent to represent the accused in a criminal proceeding, and whether an attorney has reasonably spent 10 or 100 hours representing a defendant in a criminal case are discretionary matters, not challenged here. The regulations quoted above, however, impose upon the courts several nondiscretionary duties. These include the preparation and maintenance of lists of eligible attorneys (though the determination of whether an attorney is competent to be on the list is discretionary) and the actual appointment of an attorney from that list after indigency has been determined.

*Smith*, 747 P.2d at 829.

 Under these circumstances, we conclude that King and Holcombe's requests for writs of mandamus and prohibition are justiciable if construed as a request for supervisory writs of mandamus and prohibition. Clearly, Holcombe and King raise an important issue of first impression that impacts all criminal cases in the Territory involving indigent defendants. Moreover, Holcombe and King allege that the appointment process utilized by the Superior Court violates the procedure codified by the Virgin Islands Legislature in 5 V.I.C. § 3503(a), and is thus tantamount to a usurpation of power. *See Mallard*, 490 U.S. at 309 (holding that a writ was appropriate where the trial court engaged in "conduct amounting to usurpation of . . . power" by making a "coercive appointment of counsel" not authorized by statute); *Mafnas v. Superior Court of Com. of N. Mariana Islands*, 1 N.M.I. 277, 285 (1990) (holding that such a writ is appropriate where "the Superior Court will presumably continue to act contrary" to controlling authority "[u]nless we direct otherwise, by way of supervisory writ"). And while we have concluded that we possess jurisdiction over their interlocutory appeals, reversing the December 30, 2014 and July 9, 2015 appointment orders on direct appeal would only provide limited relief to Holcombe and King in their specific cases; in contrast, a supervisory writ is immediately binding and enforceable on all judges in all cases. *See, e.g., Commonwealth v. Carman*, 455 S.W.3d 916, 928 (Ky. 2015) (issuing supervisory writ directed to all judges, notwithstanding fact that only a single judge had been named as a respondent); *Dutton v. City of Midwest City*, 2015 OK 51, 353 P.3d 532,

546 (2015) (request for supervisory writ appropriate when petitioner seeks "imposition of state-wide rules" rather than relief in a single case).[13] Because we have determined that this Court has the inherent and statutory authority to issue a supervisory writ to the Superior Court, and that such relief would not be foreclosed by the potential availability of alternate legal remedies since the requirements for a supervisory writ are considerably more flexible than traditional mandamus, we now turn to whether Holcombe and King have established that such a writ is necessary in this instance to ensure compliance with the statutory requirements for the appointment of counsel for indigent criminal defendants.

## D. Virgin Islands Law Requires A Panel of Attorney Volunteers

Section 21(c) of the Revised Organic Act provides that "[t]he rules governing the practice and procedure of the courts established by local law . . . shall be governed by local law or the rules promulgated by those

---

[13] Although not raised by any of the parties, we note that the General Counsel of the Superior Court transmitted, to the members of the Virgin Islands Bar Association, a "new proposed draft of Superior Court Rule 20 regarding the creation of panels for appointments [of attorneys] to represent indigent criminal defendants and other unrepresented parties." Letter from Paul Gimenez, Esq., General Counsel of the Superior Court of the United States Virgin Islands, to Hinda Carbon, Executive Director of the Virgin Islands Bar Association (Nov. 6, 2015). Under the proposed Superior Court Rule 20, the Executive Director of the Virgin Islands Bar Association would be required to establish four panels for the Superior Court — a "Tier 1 Indigent Criminal Defense Panel," a "Tier 2 Indigent Criminal Defense Panel," a "Family Division Panel," and a "Pro Bono Civil Division Panel." Under this proposed structure, the criminal defense panels and family panel would be constituted of volunteers, and compensated at rates ranging from $75.00 to $100.00 per hour. However, every active member of the Virgin Islands Bar who did not volunteer to serve on the criminal defense or family panels would be conscripted to join the "Pro Bono Civil Division Panel," which would require them to accept appointments in civil cases without any compensation.

We do not believe that the Superior Court's letter to the Executive Director affects the justiciability of this appeal. The letter — which was not electronically filed as part of the docket in this case — characterizes the rule is a "proposed draft," and thus — were this Court to dismiss this appeal as moot — it is possible that the Superior Court could ultimately decide not to adopt it. We further note that the proposed rule will be adopted "on a trial basis, [as] a pilot system," suggesting that it is not intended to create a permanent system, and indicating that the current system could be reinstated at some later date if the system created by proposed Rule 20 is deemed unsatisfactory for some reason. Moreover, this Court has already held that voluntary termination of a challenged practice does not render a case moot when the party "still maintain[s] that [its] initial decision . . . was legal." *Mapp v. Fawkes*, 61 V.I. 521, 530-31 (V.I. 2014). In this case, neither of the nominal respondents have notified this Court that they now believe the Superior Court's current appointment system — under which Holcombe and King were appointed to represent Titre and Sauter — is illegal.

courts." 48 U.S.C. § 1611(c). This Court has previously held that this provision vests the Virgin Islands Judiciary and the Virgin Islands Legislature with authority to promulgate procedural rules, while only permitting the Legislature to establish substantive rules. *Phillips v. People*, 51 V.I. 258, 275 (V.I. 2009); *Gov't of the V.I. v. Durant*, 49 V.I. 366, 373 (V.I. 2008) (citing *In re Richards*, 213 F.3d 773, 783-84, 42 V.I. 469 (3d Cir. 2000)). Since the United States Supreme Court established the fundamental right to counsel in criminal cases in its landmark decision in *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), courts have consistently recognized that the obligation to establish an indigent defense system — whether by creating a public defender office, or otherwise — ultimately lies with the legislative branch, given that it wields the power of the purse. *See State ex rel. Partain v. Oakley*, 159 W. Va. 805, 227 S.E.2d 314, 323 (1976) ("[T]he ultimate decision concerning the specifics of providing a defense system in accordance with [*Gideon*] is appropriately left to the Legislature of the State. That body is best suited to weigh the many variables and to tailor the system to the particular needs of this State. . . . [I]t is the sole prerogative of the Legislature to appropriate the requisite funds to maintain the system so established."); *State v. Rush*, 46 N.J. 399, 415, 217 A.2d 441 (1966) ("The Legislature should have an opportunity to decide whether this obligation of the State [to provide indigent defense] should be met by the present system of assignment in individual cases, or by a public defender, or some combination of both."); *In re Office of Dist. Public Defender for First Judicial Dist.*, 373 N.W.2d 772, 775 (Minn. 1985) (court lacks authority to withdraw from public defender system established by statute and create alternate indigent defense plan); *see also New York Cnty. Lawyers Ass'n v. Bloomberg*, 19 N.Y.3d 712, 979 N.E.2d 1162, 1163-64, 955 N.Y.S.2d 835 (2012) (noting that legislature had established indigent defense system in wake of *Gideon*); *Espinoza v. Superior Court*, 166 Ariz. 557, 804 P.2d 90, 93 (1991) (same); *State ex rel. Smith v. Brummer*, 443 So. 2d 957, 959 (Fla. 1984) ("The Office of the Public Defender is a creature of the state constitution and of statute, not of the common law."); *Earl v. Tulsa Cnty. Dist. Ct.*, 1979 OK 157, 606 P.2d 545, 547 (1979) (judicial involvement in management of public defender's office violates separation of powers); *Pulaski Cnty. ex rel. Mears v. Adkisson*, 262 Ark. 636, 560 S.W.2d 222, 223 (1978) (setting salaries for public defender's office "is a legislative and not a judicial function"); *State v. Green*, 470 S.W.2d 571, 573 (Mo. 1971) (holding legislature, not court system, must provide for indigent defense).

Like the legislatures of other jurisdictions, the Virgin Islands Legislature established the Office of the Territorial Public Defender in order to comply with the *Gideon* decision, *Fontaine v. People*, 59 V.I. 1004, 1010-11 (V.I. 2013), and, effective on July 1, 1973, vested it with primary responsibility for representing indigent defendants under title 5, section 3503(a) of the Virgin Islands Code.[14] 1972 Sess. Laws 580-81 (Act No. 3392, §§ 1-2; 8). The following year, the Legislature amended section 3503(a) to include the proviso relating to appointment of private attorneys as counsel for indigent defendants if necessary under the circumstances. 1974 Sess. Laws 279 (Act No. 3652, § 1). This statute, in its current form, provides as follows:

> Every criminal case of misdemeanor in which a penalty of imprisonment may be imposed, and in every case of preliminary investigation on a charge of felony, in which the defendant appears without counsel, in the Superior Court, the court shall advise the defendant that he has a right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain same. Unless the defendant waives the appointment of counsel, the court, if satisfied from the financial statement filed pursuant to chapter 302 of this title that the defendant is indigent and therefore unable to obtain counsel, shall refer such defendant to the Office of the Public Defender, which Public Defender shall represent him at every stage of the proceeding against him; Provided, however, the Court may, when in its judgment the circumstances warrant it, assign other counsel to represent the defendant at every stage of the proceedings; Provided, however, *That the judges of the Superior Court may appoint counsel for such indigent persons from a panel of private attorneys maintained by the Superior Court for this purpose* in no more than 15 percent in cases of defendants who by reason of indigence, are unable to obtain counsel.

5 V.I.C. § 3503(a) (emphasis added).

---

[14] As the Bar Association correctly notes in its *amicus curiae* brief, prior to the establishment of the Office of the Territorial Public Defender, the pertinent statutes simply provided for appointment of counsel to indigent defendants in felony cases, without establishing a procedure for how counsel should be appointed. *See, e.g.*, 1921 Codes, Title V, ch. 6, §§ 3-3½.

When the Virgin Islands Legislature enacted the private attorney language in 1974, the Superior Court[15] was a court of limited jurisdiction, *see Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 978 n.6 (V.I. 2011), and the United States District Court of the Virgin Islands possessed the express authority to promulgate rules for the Superior Court under the Revised Organic Act of 1954. *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 577 & n.5 (V.I. 2015); *Homer v. Lorillard*, 6 V.I. 558, 568 (V.I. Super. Ct. 1967) ("The District Court, by § 23 of the Revised Organic Act, is given authority to establish rules for the [Superior Court]."). Additionally, during this period, the District Court possessed exclusive jurisdiction to regulate the practice of law in the Virgin Islands. *In re Application of Moorhead*, 27 V.I. 74, 80-81 (V.I. Super. Ct. 1992); Former 4 V.I.C. § 441(a) (1997) ("The district court has jurisdiction over the admission of attorneys at law to practice in the courts of the Territory and over the discipline of persons so admitted and may make rules and regulations governing the practice of law in the Territory.").

Pursuant to its then-rulemaking authority and authority to regulate the practice of law, the District Court promulgated District Court Rule 16, mandating that "each active member of the Virgin Islands Bar must remain available to accept appointments to appear on behalf of indigent criminal defendants." *Barnard v. Thorstenn*, 489 U.S. 546, 557, 109 S. Ct. 1294, 103 L. Ed. 2d 559 (1989). At the time of the *Barnard* decision, District Court Rule 16 provided, in pertinent part, that

> The clerk of the District Court of the Virgin Islands shall prepare and revise from time to time as the court deems necessary a list of all attorneys who are in the active practice of law in the Virgin Islands. Separate lists shall be prepared for the Division of St. Thomas and St. John and for the Division of St. Croix. A copy of the aforementioned lists will be supplied to the clerk of the [Superior] Court of the Virgin Islands . . . .
>
> It shall be the policy of the court to make appointments pursuant to the Act if feasible on a rotational basis so as to distribute the work fairly

---

[15] In 1965, the Municipal Courts on St. Croix and St. Thomas-St. John were consolidated into a single court, and later renamed the Territorial Court in 1976. 1976 Sess. Laws 197 (Act No. 3876, § 5). In 2004, the Legislature redesignated the Territorial Court as the Superior Court. 2004 V.I. Sess. Laws 179 (Act No. 6687, § 1(b)). To avoid confusion, we refer to the former Municipal Court and Territorial Court by its current name.

among the members of the bar. However, it shall be the practice of the court in making such appointments to take into consideration the nature and complexity of the case, and the experience of counsel.

Former V.I. CODE ANN., tit. 5, app. V, Rule 16 (1982).

In 1984, Congress amended the Revised Organic Act to divest the District Court of its rulemaking authority over the Virgin Islands Judiciary. *Corraspe v. People*, 53 V.I. 470, 482 n.2 (V.I. 2010). These amendments also had the effect of divesting the District Court of its exclusive jurisdiction to regulate the Virgin Islands Bar. *Moorhead*, 27 V.I. at 81-82. "The Superior Court, as the sole local court at that time, exercised that power for the first time in 1994, in order to cover the expanded criminal jurisdiction that went into effect on January 1, 1994, as well as to govern the Virgin Islands Bar." *Vanterpool*, 63 V.I. at 577 (citing *Moorhead*, 27 V.I. at 81-82). Nevertheless, the Superior Court retained a variant of District Court Rule 16, which it designated as Superior Court Rule 303(p). This provision provided, in pertinent part, that

Appointment of attorneys to represent indigent defendants shall be made on the basis of the alphabetical rotation of their names, provided, however, that the presiding judge may provide for alternative methods of appointment based upon the seriousness of the offense, the expertise of the attorney, the length and complexity of the trial, and other appropriate factors. Temporary exemption from appointment may be granted to an attorney after representation in a complicated case.

Former SUPER. CT. R. 303(p). The Superior Court appointed counsel to indigent defendants under the Rule 303(p) system by having a "name . . . selected by the Clerk from a panel of private attorneys whose names are alphabetically rotated," with the purported panel consisting of "all active members of the Virgin Islands," excluding government attorneys and those who served on certain Virgin Islands Bar committees. *Gov't of the V.I. ex rel. R.F.*, 47 V.I. 178, 192 (V.I. Super. Ct. 2005).

A pivotal change took place, however, when the Legislature created this Court pursuant to its authority under section 21A of the Revised Organic Act. 48 U.S.C. § 1613a. "When the Legislature established this Court in 2004, it reposed in this Court 'the supreme judicial power of the Territory.' " *Banks*, 55 V.I. at 978 (quoting 4 V.I.C. § 21). The Court commenced operations on December 18, 2006, and "officially assumed

appellate jurisdiction over appeals from the Superior Court on January 29, 2007." *Hypolite v. People*, 51 V.I. 97, 101 (V.I. 2009).

On the same day this Court assumed its appellate and other authorized jurisdiction over the Superior Court, it issued an order providing that Superior Court Rules 301 through 306 would temporarily remain in effect until this Court had the opportunity to adopt its own rules relating to regulation of the practice of law in the Territory. *In re Amendment of Virgin Islands Supreme Court Rule 36 to Adopt V.I. Superior Court Rules 301 Through 306*, S. Ct. Prom. No. 2007-0001, slip op. at 1 (V.I. Jan. 29, 2007). On November 27, 2007, this Court issued a promulgation order establishing new rules to govern the Virgin Islands Bar, which also provided "that former Superior Court Rules 301, 302, 303, 304, 305, 306 and 307 are repealed and the numbers reserved for future use by the Superior Court," effective immediately. *In re Order Adopting Supreme Court Rules 201, 203, 204, 205, 206 and 207*, S. Ct. Prom. No. 2007-0011, slip op. at 1 (V.I. Nov. 27, 2007). While this Court established a rule governing appointment of counsel on appeal — former Supreme Court Rule 203(p), which was later superseded by the adoption of Supreme Court Rule 210 on October 1, 2010 — no rule was ever subsequently promulgated[16] to govern appointment of counsel in Superior Court proceedings.[17]

---

[16] Approximately a week after this Court issued its promulgation order repealing Superior Court Rule 303(p), the Legislature passed what would ultimately become Act No. 6985. Section 3(a) of this Act amended 4 V.I.C. § 32(f) to replace its existing language — that "[t]he Supreme Court shall adopt the rules of court for the Superior Court of the Virgin Islands and such other courts as many be established by local law" — with a new provision stating that "[t]he Superior Court shall adopt the rules of court for the Superior Court of the Virgin Islands consistent with section 21(c) of the Revised Organic Act of the Virgin Islands." Because this Court's order repealing Superior Court Rule 303(p) was issued before Act No. 6985 became law, it is not necessary to determine, as part of this appeal, the impact of Act No. 6985 — if any — on this Court's rulemaking authority. *Bryan v. Fawkes*, 61 V.I. 201, 230 (V.I. 2014) (citing *Limtiaco v. Camacho*, 549 U.S. 483, 489 n.2, 127 S. Ct. 1413, 167 L. Ed. 2d 212 (2007)). In any case, the Superior Court has itself recognized that section 21 of the Revised Organic Act mandates that this Court possess exclusive rule-making authority as it relates to the regulation of the legal practice in the Virgin Islands. *Pate v. Gov't of the V.I.*, 62 V.I. 271, 305 (V.I. Super. Ct. 2015) ("The Virgin Islands Supreme Court [has] exclusive jurisdiction over regulating Virgin Islands attorneys, pursuant to — and not in violation of — 48 U.S.C. § 1611.").

[17] One anonymous member of the Virgin Islands Bar Association, in an unsigned article criticizing the appointment system utilized by the Superior Court, implied that former Su-

After the repeal of Superior Court Rule 303(p), the Superior Court continued to appoint attorneys to involuntarily serve as counsel. On September 7, 2011, the Presiding Judge of the Superior Court issued a letter to all judges and attorneys that reiterated that all members of the Virgin Islands Bar — including those who did not reside in the Virgin Islands — were eligible for appointments. Letter from Darryl Dean Donohue, Sr., Presiding Judge, Superior Court of the United States Virgin Islands, to all Members of the V.I. Bar (Sept. 7, 2011). In its notice, the Superior Court also "noted that all attorneys, regardless of their background, have a responsibility to conduct research to familiarize themselves with applicable case law and strategies required for each defense," and that "it is not an excuse that the case is not within the attorney's area of practice or expertise." *Id.* While the Superior Court promised to "continue to explore additional avenues to improve its appointment process," *id.*, in the intervening four years it has maintained its practice of "select[ing] appointed counsel from a list of all attorneys admitted to practice law in the Virgin Islands, using a random appointment system."[18] *Joseph*, 2013 V.I. Supreme LEXIS 14, at \*2; *see also Simon v. Joseph*, 59 V.I. 611, 628 (V.I. 2013).

The question before us is whether this system complies with the Legislature's directive, when representation by the Office of the Territorial Public Defender is not available, that "the judges of the

preme Court Rule 203(p), which contained some — but not all — of the language of former Superior Court Rule 303(p), governed appointment of counsel in the Superior Court. *See Raising the Bar for the Criminal Defense of the Indigent*, V.I. BAR J., Spring 2014, at 9-10. However, because former Supreme Court Rule 203(p) was implicitly repealed on October 1, 2010, with the promulgation of Supreme Court Rule 210, *see In re Adoption of Rules Governing the Appointment of Counsel to Represent Indigent Parties on Appeal*, S. Ct. Prom. No. 2010-002, slip op. at 1 (V.I. Sept. 23, 2010), and expressly repealed on January 1, 2015, *see In re Amendment to Rules 203, 207, and Adoption of Supreme Court Rule 212*, S. Ct. Prom. No. 2014-0006, 2014 V.I. Supreme LEXIS 63, \*1-2 (V.I. Dec. 4, 2014), it has no relevance to any of the issues presented in this case, since King and Holcombe were both appointed after Rule 203(p)'s implicit repeal.

[18] As Exhibit A to its motion to appear as *amicus curiae*, the Bar Association provided this Court with a letter its then-President, Ernest E. Morris, Jr., Esq., wrote to the Presiding Judge of the Superior Court on November 25, 2013, to transmit a copy of the "Revised Proposal for Improvement of the Indigent Defense Appointment System" approved by the Bar Association's Board of Governors on November 21, 2013, which contained a comprehensive rule for implementing section 3503(a)'s panel requirement. The Bar Association represents that the Superior Court has taken no public action on its proposed rule.

Superior Court . . . appoint counsel for such indigent persons from a panel of private attorneys maintained by the Superior Court for this purpose." 5 V.I.C. § 3503(a). In her answer to King's mandamus and prohibition petition, Judge Francois maintains that the Superior Court's appointment procedure complies with this statute because:

> Section 3503(a) however requires that the Superior Court *maintain* a panel of private attorneys for the purpose of appointment to the representation of indigent persons. The Superior Court has in fact *maintained* such a panel for decades, not made up of membership of the "entire bar" as alleged but rather made up of a subset of the membership of the private bar which excludes a number of attorneys who perform various bar association related services as well as certain other members engaged in various public service related activities. It does not exclude, as a matter of course, members not residing in the Territory.

(Francois Br. 5 (emphases in original).)[19]

---

[19] In his answer to Holcombe's request for mandamus relief — which was filed before Judge Francois filed her answer in the *King* case — Judge Christian implies that this Court should not consider the merits of Holcombe's claim because the People should have been compelled to file a substantive brief in this appeal, since — according to him — "it is undoubtedly within [t]he Attorney General's duty by statute and oath to uphold and defend the laws of the Virgin Islands and the interests of the Government." (Christian Br. 2.) However, in this case, the gravamen of Holcombe and King's claims are that the Superior Court's practice of appointing private attorneys to involuntarily represent indigent criminal defendants violates a Virgin Islands statute.

We also cannot ignore that to the extent Judge Francois's defense of the Superior Court's involuntary appointment procedure is inadequate, it is attributable to the Superior Court and Judge Christian, as a nominal respondent, for failing to provide a substantive defense in the *Holcombe* case. As explained earlier, both Holcombe and the Bar Association filed documents with this Court expressly requesting that the Superior Court be provided with the opportunity to defend its appointment system. Although the Bar Association served its motion on the Presiding Judge of the Superior Court and invited the Superior Court to file an *amicus curiae* brief of its own—a practice that has been accepted in other courts, *see, e.g., In re A.L.*, 224 Cal. App. 4th 354, 168 Cal. Rptr. 3d 589, 593-94 (Cal. Ct. App. 2014); *Sugimoto v. Exportadora de Sal, S.A. de C.V.*, 233 Cal. App. 3d 165, 284 Cal. Rptr. 275, 276 n.1 (Cal. Ct. App. 1991); *State v. Lehman*, 137 Wis. 2d 65, 403 N.W.2d 438, 443 (Wis. 1987) — the Superior Court did not do so.

More significantly, Holcombe requested that his appeal also be considered as a mandamus petition for the main purpose of providing Judge Christian with an opportunity to file an answer under Supreme Court Rule 13(b), and this Court, through its July 1, 2015 order,

■ When interpreting a statute, we look first to its plain language. *In re Reynolds*, 60 V.I. 330, 334 (V.I. 2013). In doing so, the Legislature has instructed that "[w]ords and phrases" in the Virgin Islands Code "shall be construed according to the common and approved usage of the English language" unless the word has "acquired a peculiar and appropriate meaning in the law." 1 V.I.C. § 42.

■ We agree with Holcombe, King, and the Bar Association that the phrase "panel of private attorneys" cannot encompass every private-sector member of the Virgin Islands Bar, even with limited exceptions for members of the Commission of Bar Examiners and the Board on Professional Responsibility.[20] The word "panel," by its very nature, contemplates a smaller subset of a larger group. *See, e.g., LaShawn A. v. Barry*, 87 F.3d 1389, 1395, 318 U.S. App. D.C. 380 (D.C. Cir. 1996) (summarizing structure of federal courts of appeals, which "sit in panels, or divisions," consisting of three judges who are a subset of the complete court); *People v. Avila*, 38 Cal. 4th 491, 43 Cal. Rptr. 3d 1, 133 P.3d 1076, 1110 (2006) (rejecting argument that "panel," in the context of a rule governing peremptory challenges, refers to "the entire venire" as opposed to only "the subset of the members of the whole venire who are called to fill the jury box during voir dire"). Importantly, "[i]t is proper to presume

---

acted on this request and issued a new briefing schedule that permitted Judge Christian to file an answer. However, rather than addressing the merits of Holcombe's arguments, Judge Christian chose to only argue that this matter should be dismissed as moot. It is axiomatic that a party who received permission to file a brief on the merits, but for strategic reasons chose to not take advantage of that opportunity, cannot complain when a court reaches the merits without the benefit of any opposing arguments. *First Capitol Mortgage Corp. v. Talandis Constr. Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493, 495 (1976). To hold otherwise would effectively provide an opposing party with the ability to veto an appellant's right to appeal. *Aquarian Foundation v. KTVW, Inc.*, 11 Wn. App. 476, 523 P.2d 969, 971 (1974) ("When the Foundation perfected its appeal, it became entitled to a ruling on the merits of its contentions, a right which should not be thwarted by KTVW's choice to default.").

[20] In her answer, Judge Francois cites to *Gov't of the V.I. v. Roberts*, 8 V.I. 125, 127 (V.I. Super. Ct. 1969), for the proposition that "the [Superior Court] has the inherent power to appoint counsel to represent a defendant in a criminal case." However, as Judge Francois herself acknowledges, the *Roberts* decision was issued "long before [the enactment of] Section 3503." (Francois Br. 6.) As explained earlier, the Legislature unquestionably possesses the authority to decide the method for providing counsel to indigent defendants. Consequently, absent a finding that the method selected by the Legislature is unconstitutional, Virgin Islands courts lack the authority — inherent or otherwise — to simply disregard or rewrite the Virgin Islands Code. *In re Reynolds*, 60 V.I. 330, 337 n.7 (V.I. 2013) (citing *Robles v. HOVENSA, LLC*, 49 V.I. 491, 499 (V.I. 2008)).

that a legislature knows the meaning of words, has used the words of a particular statute advisedly, and has expressed its intent by the[] words as found in th[e] statute." *In re Estate of George*, 59 V.I. 913, 923 (V.I. 2013) (quoting *Gov't of the V.I. v. Thomas*, 9 V.I. 17, 23 (V.I. Super. Ct. 1971)). Had the Legislature intended to subject all private attorneys to such appointments, it could have easily used a phrase to that effect, such as "all private attorneys" or "every private attorney." In fact, other statutes passed by the Legislature use such all-encompassing language. *See, e.g.*, 4 V.I.C. § 442(b) ("each practicing attorney"); 33 V.I.C. § 746(a) ("[e]very attorney").

 Although Judge Francois asserts that the exclusion of certain private sector attorneys from involuntary appointments satisfies the subset requirement, we conclude that the "panel of private attorneys" language in section 3503(a) contemplates a voluntary, rather than compulsory, panel. "[C]ourts should presume that when the Legislature creates a statute,. it is aware of the long-standing procedures and practices of the courts." *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 428 (V.I. 2013) (citing *Henderson v. Shinseki*, 562 U.S. 428, 435-36, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011)). As noted earlier, the Legislature enacted the present version of section 3503(a) to comply with the constitutional requirements set forth in the United States Supreme Court's *Gideon* decision. *Fontaine*, 59 V.I. at 1010. The "panel of private attorneys maintained by the Superior Court for this purpose" proviso is similar to a phrase found in the Federal Criminal Justice Act of 1964, both originally and as amended in 1970, which required federal district courts to establish indigent defense plans, and which could include appointing counsel "from a panel of attorneys designated or approved by the district court." Pub. L. 88-455, § 2, 78 Stat. 552, 552-54 (1964); Pub. L. 91-447, § 1, 84 Stat. 916, 916-20 (1970). Shortly after the Criminal Justice Act went into effect, the Criminal Justice Committee of the United States Judicial Conference promulgated a model plan for compliance with this provision, "which contemplate[d] that only lawyers who willingly volunteer for appointments will be assigned to indigent cases." *In re Snyder*, 734 F.2d 334, 339 & n.9 (8th Cir. 1984) (citing Model Plan for the Composition, Administration and Management of the Panel of Private Attorneys under the Criminal Justice Act, *Guidelines for the Administration of the Criminal Justice Act*, Vol. VII, App. G, Guide to Judiciary Policies and Procedures). In fact, virtually all federal district courts — including the

836

United States District Court of the Virgin Islands[21] and the United States District Court of Guam[22] — have established completely voluntary panels, with attorneys "fac[ing] competition to get on [the] panels in order to receive appointments." Hon. John Gleeson, *The Sentencing Commission and Prosecutorial Discretion: The Role of the Courts in Policing Sentence Bargains*, 36 HOFSTRA L. REV. 639, 653-54 & n.60 (2008). In light of how similar language in the Criminal Justice Act had been implemented by the federal judiciary, it is difficult to see how the Legislature could have envisioned a different procedure being implemented in the Virgin Islands.[23] *Brooks*, 58 V.I. at 428.

This result is consistent with how similar state statutes have been interpreted. For example, under West Virginia statutory law, "[i]n each circuit of the state, the circuit court shall establish and maintain regional and local panels of private attorneys-at-law who are available to serve as counsel for eligible clients." W. VA. CODE § 29-21-9(a). The Supreme Court of West Virginia interpreted this language as requiring appointment of "a *voluntary* member of the local panel of attorneys" or "a *voluntary* member of the regional panel of attorneys." *State ex rel. Barber v. Cline*, 182 W. Va. 669, 391 S.E.2d 359, 361 (1990) (emphases added). Likewise, the phrase "panels of attorneys designated and approved by the courts" in the District of Columbia Code has always been interpreted to require a

[21] *See* U.S. DISTRICT COURT FOR THE DISTRICT OF THE V.I., CRIMINAL JUSTICE ACT PLAN at 5 & App. II, http://www.vid.uscourts.gov/sites/vid/files/cja_plan_vid.pdf, *archived at* http://perma.cc/GWL2-4T2V (providing for a "panel of attorneys . . . who are eligible *and willing* to be appointed to provide representation under the CJA" (emphasis added)). As of December 30, 2014, 23 attorneys served on the District Court's voluntary panel. *In re Order Appointing Criminal Justice Act (CJA) Panel for the District Court of the Virgin Islands*, No. 1:11-MC-18, slip op. at 1 (D.V.I. Dec. 30, 2014).

[22] *See* CRIMINAL JUSTICE ACT PLAN FOR THE DISTRICT COURT OF GUAM at 8, http://www.gud.uscourts.gov/sites/default/files/orders/CJA%20Plan%2020120622.pdf, *archived at* http://perma.cc/3R7X-U6EH (establishing a "panel of attorneys . . . who are eligible *and willing* to be appointed" (emphasis added)).

[23] Although not determinative to our analysis, we also recognize that a system in which attorneys are appointed to involuntarily represent indigent defendants at a significantly reduced hourly rate may implicate the Takings Clause of the Fifth Amendment to the United States Constitution. *See, e.g., Joseph*, 2013 V.I. Supreme LEXIS 14, at *13; *In re Morton*, 56 V.I. 313, 320-21 (V.I. 2012); *DeLisio v. Alaska Superior Ct.*, 740 P.2d 437, 442-43 (Alaska 1987); *Arnold v. Kemp*, 306 Ark. 294, 813 S.W.2d 770, 774-75 (1991); *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816, 842 (1987); *State v. Lynch*, 1990 OK 82, 796 P.2d 1150, 1158 (1990).

panel of volunteers. *Roth v. King*, 449 F.3d 1272, 1277-78, 371 U.S. App. D.C. 254 (D.C. Cir. 2006).

 Moreover, we cannot ignore that Judge Francois's proposed interpretation of section 3503(a) is wholly in conflict with this Court's statutory and inherent power to regulate the legal profession in the Virgin Islands. *See* 4 V.I.C. § 32(e); *In re Application of Shea*, 59 V.I. 552, 556 (V.I. 2013); *In re Admission of Alvis*, 54 V.I. 408, 413-14 (V.I. 2010). This Court, as the highest court of the Virgin Islands, possesses the authority to establish the requirements for initial admission to the Virgin Islands Bar, *see In re Application of Payton*, S. Ct. BA. No. 2007-0146, 2009 V.I. Supreme LEXIS 17, at *13 (V.I. Mar. 20, 2009) (unpublished) (collecting cases), as well as the conditions for maintaining a law license, such as compulsory membership in the Virgin Islands Bar Association, payment of bar dues, and compliance with the mandatory continuing legal education requirements set by this Court. *See In re Petition to Amend Bylaws*, 60 V.I. 269, 275, 279-80 (V.I. 2013); *Pate v. Gov't of the V.I.*, 62 V.I. 271, 288 (V.I. Super. Ct. 2015) (summarizing the requirements this Court has implemented for maintenance of a law license). To the extent Judge Francois is correct that the Superior Court has established an involuntary panel consisting of all private sector attorneys who have not expressly received an exemption due to their service to the Bar, the Superior Court has infringed on this Court's "exclusive jurisdiction" over the Bar, 4 V.I.C. § 32(e), in that the Superior Court has made acceptance of appointed cases — often times multiple cases a year[24] — a *de facto* requirement of active membership in the Virgin Islands Bar Association.

 Thus, we conclude that the Superior Court erred when it appointed Holcombe and King, respectively, to involuntarily represent Titre and Sauter, without first establishing a panel of attorney volunteers and making an appointment from that panel.[25] In light of this conclusion,

---

[24] The United States Supreme Court, when it issued its *Barnard* decision in 1989, noted that at the time "each active member of the Virgin Islands Bar . . . can expect to receive appointments about four times per year." 489 U.S. at 557. In their briefs, as well as at oral argument, Holcombe, King, and the Bar Association noted that some attorneys receive an even greater number of appointments under the system currently utilized by the Superior Court.

[25] In their respective briefs, Holcombe, King, and the Bar Association emphasize that section 3503(a) provides that the Superior Court may appoint private counsel in "no more than 15 percent [of] cases." 5 V.I.C. § 3503(a). However, as the Bar Association acknowledges in its *amicus curiae* brief, the Superior Court has failed to publish "actual statistics to empirically

it is also clear that Holcombe and King have satisfied all the requirements for a supervisory writ of mandamus to ensure that the requirements of section 3503 are adhered to in the future appointment of counsel for indigent criminal defendants, since such a writ will "eliminate uncertainty and add importantly to the efficient administration of justice," *Colonial Times, Inc.*, 509 F.2d at 524, and prevent "practices posing severe threats to the proper functioning of the judicial process." *McBryde*, 117 F.3d at 223. In reaching this decision, we do not intend to imply that members of the Virgin Islands Bar are not required to discharge their ethical duties to "aspire to render at least 50 hours of pro bono publico legal services per year," V.I.S.CT.R. 211.6.1, and to "not seek to avoid appointment by a tribunal to represent a person except for good cause," V.I.S.CT.R. 211.6.2. We also do not hold that the Superior Court can never, under any circumstances, appoint an attorney to involuntarily represent a criminal defendant, given that there might be instances — though likely rare[26] — where the Office of the Territorial Public Defender and every member of the panel may be ethically precluded from representing a particular defendant, yet *Gideon* necessitates that the defendant receive court-appointed counsel. As the Supreme Court of Arizona explained in a similar case,

> [N]othing we say here should be interpreted as limiting a judge's inherent authority to achieve justice by appointing a particular lawyer to represent a defendant or litigant in a particular case, even if the appointment is pro bono or causes financial hardship to the appointed

---

prove [how] the system is administered," which thus invites reliance on "[c]ommon experience" and "anecdotal reports." (V.I. Bar Ass'n Br. 23-24.) Consequently, the record contains no evidence from which this Court can determine whether the Superior Court is in compliance with the 15 percent requirement. Nevertheless, while we agree that the Superior Court must comply, to the greatest extent possible, with the 15 percent limitation imposed by section 3503(a), we note that procedures adopted through a Virgin Islands statute may not override the requirements and mandates of the United States Constitution. *See Frett v. People*, 58 V.I. 492, 505-06 (V.I. 2013).

[26] In addition to 23 attorneys volunteering to serve on the District Court's indigent defense panel, we note that the Virgin Islands Bar Association compiled a list of 13 attorneys willing to accept court-appointed cases in the Superior Court. *See* Virgin Islands Bar Association, *Criminal Appointment List for Off-Island Attorneys (Updated 2/20/13)*, http://c.ymcdn.com/sites/www.vibar.org/resource/resmgr/imported/Crimiminal%20Appointment%20List%20Updated%20February%2020%202013.pdf, *archived at* http://perma.cc/9BDV-DRVL.

lawyer. *There is a stark distinction, however, in requiring a lawyer to handle one case or a few and in conscripting lawyers to regularly handle all cases regardless of their ability or willingness to do so.* We do not believe the court's inherent authority can extend so far. Whatever appointment process a court adopts should reflect the principle that lawyers have the right to refuse to be drafted on a systematic basis and put to work at any price to satisfy [the government's] obligation to provide counsel to indigent defendants.

*Zarabis v. Bradshaw*, 185 Ariz. 1, 912 P.2d 5, 8 (1996).

We are confident that, going forward, the Virgin Islands will join virtually every other United States jurisdiction in permitting the indigent defense function to be performed by qualified volunteers, whether they be attorneys employed by the Office of the Territorial Public Defender or private attorneys who have willingly joined a panel. We recognize, however, that given the high volume of criminal cases involving indigent criminal defendants, it may not be possible for the Superior Court to transition immediately from the current system of involuntary appointments to a voluntary system. In addition to actually creating a panel — which would necessarily include publicizing its existence and establishing a process for accepting applications — other ancillary issues would also need to be addressed. For example, in its *amicus curiae* brief, the Bar Association notes that the Virgin Islands Judiciary will need to consider (1) the minimum experience, if any, that should be a prerequisite to joining the panel; (2) whether to establish one panel or tiered panels based on the seriousness of the offense;[27] (3) the rate of pay for the attorneys who have volunteered to accept appointed cases from the panel;[28] and (4) how to proceed in the event the number of attorneys who join the panel is insufficient to provide services to all indigent

---

[27] For example, in its "Revised Proposal for Improvement of the Indigent Defense Appointment System," the Bar Association proposes that the panel be divided into three tiers — misdemeanors, standard felonies, and complex felonies — with differing experience requirements and structured in a way that would permit an attorney to accept only certain types of cases.

[28] Pursuant to section 2(b) of Act No. 7316, the Superior Court must "compensate court-appointed attorneys at a rate not less than $75 per hour for in and out of court representation." In its "Revised Proposal," the Bar Association urges that attorneys assigned to represent indigent defendants in complex felony cases be compensated at higher rates, such as $100 per hour. The Bar Association's proposal also calls for certain non-monetary compensation, such

defendants.[29] *Accord, Jewell v. Maynard*, 181 W. Va. 571, 383 S.E.2d 536, 541 (1989) (explaining that "the failure to make timely payments [to court-appointed attorneys] caused the number of volunteers to decline dramatically" from West Virginia's statutorily-mandated panel).

■ Apparently recognizing that the transition to a voluntary appointment system may take some time, King, Holcombe, and the Bar Association, citing several cases establishing the power of appellate courts to establish procedures for trial courts,[30] urge "that this Court establish rules regarding the appointment of counsel to indigent defendants that are fair, equitable, and applied in an evenhanded manner;

as permitting panel members to attend continuing legal education seminars and training programs at the Superior Court's expense.

[29] Even the Bar Association concedes that there may be certain situations where it may be impossible to appoint counsel for a particular defendant from a panel, thus necessitating an involuntary appointment. However, the Bar Association maintains that there must be "clear and prospectively-operative standards" that govern these involuntary appointments to ensure that the Superior Court does not engage in "excessive and unfair impositions on individual lawyers." (V.I. Bar Ass'n Br. 21.) To support its position, the Bar Association notes that even though the Superior Court purports to appoint counsel in an alphabetical rotation, it deviated from this arrangement by appointing Nagi as Titre's counsel on November 12, 2014, but then appointing Holcombe as substitute counsel on December 30, 2014. (V.I. Bar Ass'n Br. 23.)

In her answer, Judge Francois asserts that the Superior Court has historically appointed attorneys through an alphabetical rotation, and notes that she appointed King "because he was alphabetically next after Attorney Helen Kim on the panel list maintained in the Clerk's Office." (Francois Br. 3.) However, the record clearly indicates that King had not been randomly appointed, but had been appointed as a result of Judge Francois permitting Sauter to submit a list of three attorneys with whom she would be satisfied. Moreover, the record also reflects that Kim had been appointed on November 26, 2014, while Judge Francois appointed King more than seven months later on July 9, 2015. In addition, the fact that Judge Christian had appointed Nagi to represent Titre on November 12, 2014 — two weeks before Judge Francois appointed Kim to represent Sauter — and appointed Holcombe as substitute counsel on December 30, 2014, further undercuts the claim that the Superior Court appoints counsel using a purely alphabetical rotation.

[30] *See, e.g., Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973) ("[An] appellate court will, of course, require the trial court ... to follow procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution"); *Bartone v. United States*, 375 U.S. 52, 54, 84 S. Ct. 21, 11 L. Ed. 2d 11 (1963) (appellate courts have "broad powers of supervision"); *McNabb v. United States*, 318 U.S. 332, 340, 63 S. Ct. 608, 87 L. Ed. 819 (1943) ("Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining ... standards of procedure ...."); *see also State v. Harrison*, 270 S.W.3d 21, 26, 36-37 (Tenn. 2008); *State v. Bennett*, 161 Wn.2d 303, 165 P.3d 1241, 1249 & n.11 (2007).

and . . . follow the letter and spirit of 5 V.I.C. § 3503(a)," (King Br. 15), or exercise its "supervisory jurisdiction" over the Superior Court to institute "[p]roactive, administrative reform," such as "by itself promulgating a rule specifying [the] Superior Court indigent appointment protocol." (V.I. Bar Ass'n Br. 26.) Presumably, promulgating such rules concurrently with the issuance of this opinion would allow for a quicker transition to the voluntary system.

We agree with King, Holcombe, and the Bar Association that this Court may exercise such authority pursuant to its statutory and inherent powers. *See* 48 U.S.C. § 1611(c); 4 V.I.C. § 21 ("The Supreme Court of the Virgin Islands is established . . . as the highest court of the Virgin Islands and in it shall be reposed the supreme judicial power of the Territory."); 4 V.I.C. § 31(d)(3) ("The Chief Justice has general oversight of the judicial branch of the Government of the Virgin Islands."); 4 V.I.C. § 34(a) ("The Supreme Court may, from time to time, promulgate or amend general rules . . . ."); *Vanterpool*, 63 V.I. at 583 (holding Superior Court may not establish rules that conflict with Supreme Court precedent) (citing *Sweeney v. Ombres*, 60 V.I. 438, 442 (V.I. 2014)); *Pate*, 62 V.I. at 305 ("The Virgin Islands Supreme Court [has] exclusive jurisdiction over regulating Virgin Islands attorneys, pursuant to — and not in violation of — 48 U.S.C. § 1611.").

■ Moreover, section 3503 also provides that "[t]he District Court may from time to time prescribe rules for the implementation of subsections (a), (b) and (c) of this section." 5 V.I.C. § 3503(d). As mentioned earlier, at the time the Legislature passed section 3503, the District Court possessed exclusive jurisdiction to regulate the Virgin Islands Bar. Former 4 V.I.C. § 441(a) (1997) ("The district court has jurisdiction over the admission of attorneys at law to practice in the courts of the Territory and over the discipline of persons so admitted and may make rules and regulations governing the practice of law in the Territory."). After the District Court was divested of its jurisdiction over purely local cases, the Superior Court, as the highest court of the Virgin Islands, obtained exclusive jurisdiction to regulate the Virgin Islands Bar. *Moorhead*, 27 V.I. at 88. When jurisdiction over the Virgin Islands Bar was transferred from the Superior Court to this Court in 2007, *see In re Application of Coggin*, 49 V.I. 432, 436 (V.I. 2008), all references to the District Court or the Superior Court in statutes relating to regulation of the practice of law, enacted during the period when those courts possessed

exclusive jurisdiction to regulate the Virgin Islands Bar, were implicitly repealed and replaced to vest such power in this Court. *See In re Rogers*, 57 V.I. 553, 558 n.1 (V.I. 2012) (reference to "District Court" in 4 V.I.C. § 443(b) implicitly repealed and should be construed as referring to the Supreme Court); *accord, Gov't of the V.I. v. Crooke*, 54 V.I. 237, 246-47 (V.I. 2010); *Parrott v. Gov't of the V.I.*, 230 F.3d 615, 43 V.I. 277 (3d Cir. 2000). Consequently, this Court clearly possesses the power to establish the rules governing appointment of counsel for indigent criminal defendants in the Virgin Islands, and as such any rules or regulations affecting the Virgin Islands Bar — such as those requiring Virgin Islands attorneys to accept appointments as a condition of membership in the Virgin Islands Bar Association — must be approved by this Court. *See Pate*, 62 V.I. at 283. While the Superior Court may enter into voluntary contracts with attorneys to provide representation to indigent defendants, *cf. Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1252 (9th Cir. 2013) (holding Takings Clause not implicated when individual voluntary contracts with the government to provide a service), it may not involuntarily conscript attorneys to provide any services — and thus establish a *de facto* licensing requirement for attorneys — without this Court's approval. *See Goetz v. Harrison*, 153 Mont. 403, 457 P.2d 911, 912 (1969) (holding that a trial court has no supervisory control over the Supreme Court and may not establish Bar regulations that contradict those established by the Supreme Court).

 We do not, however, believe that it would be prudent to exercise this authority in the present context. Issuing rules simultaneously with this opinion would be inconsistent with our long-standing practice of "giving appropriate public notice and an opportunity for comment from the local Bench, the public, and the local bar" prior to having proposed rules go into effect. V.I.S.CT.R. 37(a). Additionally, section 3503(a) calls for the "judges of the Superior Court" to "maintain[]" the "panel of private attorneys." 5 V.I.C. § 3503(a). Since maintenance of the panel is statutorily vested with the Superior Court, we believe the Superior Court should propose an appropriate procedure in the first instance, based on the guidance it has received from this Court through this opinion.[31]

---

[31] As noted earlier, the Superior Court recently released proposed Superior Court Rule 20 for comment. It is not clear why the nominal respondents or the Superior Court — which,

For these reasons, we vacate the Superior Court's decisions to appoint Holcombe as counsel to Titre and King as counsel to Sauter, grant Holcombe and King's petitions for a supervisory writ of mandamus to the Superior Court, and provide Holcombe and King — having successfully litigated these matters — with immediate relief from future involuntary appointments by the Superior Court under its current practices. However, we shall stay enforcement of our decision with respect to all other members of the Virgin Islands Bar who remain subject to involuntary appointments under the Superior Court's current practices until March 1, 2016. We are confident that this temporary stay will provide the Superior Court with sufficient time to review indigent defense rules from jurisdictions similar to the Virgin Islands,[32] to consider feedback from the

---

through service on the General Counsel of the Superior Court, were aware of the oral argument scheduled on November 10, 2015, and sought to be excused therefrom — did not bring this proposed rule to this Court's attention prior to oral arguments by electronically filing it in these cases, which would have allowed it to be discussed at oral argument. This proposed rule, however, is not consistent with either section 3503 or this Court's exclusive jurisdiction to regulate the Virgin Islands Bar. Although the proposed rule would solicit "volunteers" to join the "Tier 1 Criminal Defense Panel," "Tier 2 Criminal Defense Panel," and "Family Division Panel" and be compensated at rates ranging from $75.00 to $100.00 per hour, it also establishes a "Pro Bono Civil Defense Panel" whose members receive no compensation whatsoever. Significantly, the proposed rule provides that "[a]ttorneys shall be *required* to serve on at least (1) panel," and the "Pro Bono Civil Division Panel" consists of "[a]ll active members of the Virgin Islands Bar who are not members of either the Indigent Criminal Defense Panel or the Family Division Panel." Proposed SUPER. CT. R. 20(a)(3); (b)(2) (emphasis added). The requirement that all attorneys who do not "volunteer" for the criminal and family panels will be conscripted to represent civil litigants at no compensation at all not only continues to make acceptance of appointed cases a *de facto* requirement of Bar membership, but renders the indigent criminal defense panels voluntary in name only, since attorneys are faced with a choice of representing criminal defendants at a rate of $75.00 to $100.00 per hour, or civil litigants at a rate of $0.00 per hour. Such an arrangement continues to raise very serious concerns under the Takings Clause of the United States Constitution. Moreover, section 3503(a) expressly provides that the "panel of private attorneys" be "maintained by the Superior Court," yet the proposed Rule 20 directs the Executive Director of the Virgin Islands Bar Association to maintain the panel for the Superior Court. In addition to being contrary to the statutory language, the Virgin Islands Bar Association is an arm of the Supreme Court, not the Superior Court. *See In re Rogers*, S. Ct. Civ. No. 2014-0024, 2014 V.I. Supreme LEXIS 31, at *9 (V.I. May 27, 2014) (unpublished); V.I.S.CT.R. 205(a).

[32] For example, we note that the Territory of Guam — which has significantly fewer attorneys than the Virgin Islands — has successfully maintained a voluntary indigent defense panel for the Superior Court of Guam since 1981, and has promulgated a comprehensive rule establishing guidelines for the appointment of counsel, manner and priority of appointment, qualifications and eligibility to serve on the panel, maintenance of records and creation of reports

Bar Association, the public, and other stakeholders; establish a panel; and otherwise craft procedures for appointment of counsel to indigent defendants that comply with 5 V.I.C. § 3503(a) and other applicable laws. In the event it fails to do so, this Court reserves the authority to establish procedures for the appointment of counsel in the first instance pursuant to its statutory and inherent powers, in order to ensure that members of the Virgin Islands Bar are not systematically conscripted to provide indigent defense in violation of Virgin Islands statutory law. *See, e.g.*, 48 U.S.C. § 1611(c); 4 V.I.C. § 21; 4 V.I.C. § 31(d)(3); 4 V.I.C. § 32(b), (e)-(f).

## III. CONCLUSION

■ The Virgin Islands Legislature, acting pursuant to its authority to create local law, enacted a statute, 5 V.I.C. § 3503(a), providing that appointment of counsel to indigent defendants should be made from a panel of private attorneys when the Office of the Territorial Public Defender is unable to undertake the representation. Because the Superior Court's practice of appointing private attorneys from a list of all members of the Virgin Islands Bar to serve involuntarily as criminal defense counsel violates this statute, we vacate the Superior Court's December 30, 2014 and July 9, 2015 appointment orders, but shall stay enforcement of our decision until March 1, 2016, with respect to all attorneys — other than Holcombe and King — who are otherwise not exempt from appointments under the Superior Court's current practices, so that the Superior Court may establish and maintain a panel of attorney volunteers in compliance with section 3503(a). If the Superior Court fails to do so prior to this deadline, this Court shall consider the request of Holcombe, King, and the Bar Association to establish procedures in the first instance ensuring that the appointment process in the Superior Court complies with Virgin Islands law.

---

to ensure that the panel operates as intended, and levels of attorney compensation. *See* GUAM SUPER. CT. MISC. R. 1.1. Similarly, the District of Columbia has established a comprehensive plan for representation of indigent criminal defendants through a voluntary panel. *See* PLAN FOR FURNISHING REPRESENTATION TO INDIGENTS UNDER THE DISTRICT OF COLUMBIA CRIMINAL JUSTICE ACT, http://www.dccourts.gov/internet/documents/cja_plan.pdf, *archived at* http://perma.cc/WC8C-2G6U.