# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

THE PEOPLE OF THE VIRGIN ISLANDS **Plaintiff** )
)
Vs. )
)
)
JERRIS THOMAS BROWNE )
**Defendant** )

CASE NO. SX-17-CR-0000174

ACTION FOR: 14 V.I.C. 834(2)

# NOTICE OF ENTRY OF MEMORANDUM OPINION

TO: TAMARA CHARLES CLERK OF THE SUPERIOR COURT
PAMELA R. TEPPER, ESQ.
MARTIAL A. WEBSTER, ESQ.
MAGISTRATES OF THE SUPERIOR COURT
LAW CLERKS
JUDGES OF THE SUPERIOR COURT
JOSEPH PONTEEN, ESQ.
IT DEPARTMENT
H. HANNIBAL O'BRYAN, ESQ.

Please take notice that on February 14, 2020 a(n) MEMORANDUM OPINION

dated February 14, 2020 was entered by the Clerk in the above-entitled matter.

Dated: February 14, 2020

Tamara Charles
CLERK OF THE SUPERIOR COURT

SHAMAR SIMMONDS
COURT CLERK II

FOR OFFICIAL PUBLICATION

## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

IN RE: QUINCY G. MCRAE.    )
    )
_____ )
    )
PEOPLE OF THE VIRGIN ISLANDS,  ) **CASE NO. SX-17-CR-174**
    ) **CASE NO. SX-17-CR-175**
   Plaintiff,  ) **CASE NO. SX-17-CR-189**
    )
   v.    )
    )
JERRIS T. BROWNE,   )
GREGORY CHRISTIAN, and  )
SYED GILANI,    )
    )
   Defendants.  )
_____ )

Cite as: 2020 VI Super

**Appearances:**

**PAMELA R TEPPER, ESQ**
Solicitor General
Virgin Islands Department of Justice
St. Thomas, VI 00802
*For Quincy G. McRae, Esq.*

**JOSEPH PONTEEN, ESQ.**
Chief Deputy Attorney General
Virgin Islands Department of Justice
Kingshill, VI 00851
*For Plaintiff People of the Virgin Islands*

**MARTIAL A WEBTER, SR., ESQ.**
Law Offices of Martial A. Webster, Sr., P.C.
Frederiksted, VI 00840
*For Defendant Jerris T. Browne*

**H. HANNIBAL O'BRYAN, ESQ.**
Deputy Chief Territorial Public Defender
Office of the Territorial Public Defender
Kingshill, VI 00850
*For Defendant Gregory Christian*

*In re: McRae / People v. Browne People v. Christian/ People v. Gilani*
SX-17-CR-174 / SX-17-CR-175 / SX-17-CR-189
**MEMORANDUM OPINION**
Page 2 of 15

2020 VI Super 26

**PAMELA LYNN COLON, ESQ.**
Law Offices of Pamela Lynn Colon, LLC
Christiansted, VI 00820
*For Defendant Syed Gilani*

## MEMORANDUM OPINION

**MOLLOY,** *Judge.*

¶1      **THIS MATTER** came before the Court on an order directing Quincy G. McRae, Esq. ("Attorney McRae"), Chief of the St. Thomas Criminal Division of Virgin Islands Department of Justice, to show cause why he should not be held in contempt for failing to comply with an order directing the People of the Virgin Islands to file bimonthly status reports. At the conclusion of the hearing, the Court found Attorney McRae in contempt and fined him $250.00 to compensate the Superior Court "for the harm it suffered from the contemnor's non-compliance." *In re: Meade*, 63 V.I. 681, 685 (2015). This Opinion memorializes the bench ruling.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

¶2      The People of the Virgin Islands charged Jerris T. Browne ("Browne"), Gregory Christian ("Christian"), and Syed Gilani ("Gilani") with several crimes, including embezzlement, obtaining money by false pretenses, and conversion of government property, among others, allegedly through a scheme to defraud the Government of the Virgin Islands of some $2 million in grant funding awarded to the Virgin Islands Bureau of Motor Vehicles ("BMV") to become compliant with the REAL ID Act. No fewer than seven different prosecutors appeared during the two-and-a-half years, approximately, that these cases were pending.[1] Attorney McRae petitioned the St. Thomas/St. John Division of the Superior Court of the Virgin Islands for the arrest warrants. Assistant Attorney General Brenda Scales filed the charging document that formally opened these cases. Assistant Attorney General John E. Tolud, former director of the White Collar Crime Division, appeared by notice of appearance filed on December 4, 2017, and was later succeeded by Attorney McRae, who filed a notice of appearance on July 18, 2018. Assistant Attorney General Alexandra Bynum worked on these cases outside court and had appeared with Attorney Tolud at a January 25, 2018 pretrial

---

[1] The People of the Virgin Islands filed motions on February 10, 2020, to dismiss all charges without prejudice, explaining that "[t]he People will not be able to maintain its burden of proof at trial . . . ." (Pl.'s Mot. to Dismiss without Prej. 1, filed Feb. 10, 2020.)

*In re: McRae / People v. Browne  People v. Christian/ People v. Gilani*
SX-17-CR-174 / SX-17-CR-175 / SX-17-CR-189
**MEMORANDUM OPINION**
Page 3 of 15

2020 VI Super 26

conference. Approximately three weeks after Attorney McRae formally appeared by notice, Assistant Attorney General Tiffany A. McLean, as the new director of the White Collar Crime Division, appeared by notice filed on August 8, 2018. And Assistant Attorney General Joseph Ponteen was the last prosecutor to appear. He formally noticed his appearance on February 6, 2020 but had also been involved earlier: attending an August 9, 2018 site visit and standing in for the People at a January 30, 2020 hearing. Finally, because the cases were filed on St. Croix, Assistant Attorney General Damon Watson-Willis appeared at advice of rights and arraignment, and later on behalf of Attorney Tolud at an October 26, 2017 pretrial conference.[2]

¶3    Progress in these cases was, for the most part, uneventful at first. Discovery was due to be completed by October 27, 2017, with jury selection and trial scheduled for May 14, 2018. Because of the impact of Hurricanes Irma and Maria, which struck the Virgin Islands in early September 2017, deadlines to complete discovery and file motions had to be extended. By beginning of 2018, however, the pace began to slow. The People had "dumped," as Gilani called it, "a large box full of documents, none of which were Bates stamped, marked or identified in any other manner." (Def. Giliani's Mot. to Be Relieved from Doc. Dump, for Witness & Exh. List & Other Relief 1, filed Jan. 4, 2018.) Finding merit in Gilani's motion, which the other Defendants joined, the Court ordered the People to re-produce discovery in an orderly format and continued jury selection and trial to December 10, 2018. The People were given until May 30, 2018 to allow the Defendants to inspect physical and intangible items, including the computer hardware at the center of these cases.

¶4    On June 1, 2018, Giliani filed a motion to conduct a site visit of the BMV Offices on St. Croix "to view the current state of certain computer hardware . . . in the custody of the [BMV] . . . ." (Order 2, entered Aug. 13, 2018.) "Gilani specifically requested that 'the visit take place before any of the hardware is relocated, and that nothing be altered prior to the judicial visit, so that it can be viewed

---

[2] Attorney Watson-Willis' appearance had caused some unease because Attorney Tolud had represented, in a motion for permission to appear telephonically, that "[t]he St. Croix office of the Department of Justice has a conflict with this matter and therefore, the St. Thomas Office has been assigned to handle this case." (Pl.'s Mot. to Appear Telephonically 1, filed Oct. 23, 2017.) When the motion was not ruled on prior to the status conference, Attorney Watson-Willis appeared for Attorney Tolud, promoting Gilani to object – because of the "conflict" with the St. Croix office, which the Court and defense counsel understood to mean a "conflict of interest." Gilani moved the Court to direct Attorney Tolud to detail the basis of the conflict in writing, which Christian joined, and which the Court granted Attorney Tolud later explained: "Simply put, there is no 'conflict of interest' between the (2) two DOJ offices." (Pl.'s Info. Mot. 1, filed Nov. 21, 2017.) Instead, "the term 'conflict' was used to refer to one of attorney staffing and scheduling – and not a 'conflict of interest' in the legal sense." *Id.* A month later, Attorney Tolud formally appeared by notice, dated December 4, 2017.

in the same circumstances and conditions as the site inspection done by the parties on May 31, 2018." *Id.* (brackets, ellipsis, and citation omitted). "The People neither filed a response nor objected to Gilani's motion. . . . and instead offered to make arrangements to facilitate the site visit." *Id.* (footnote omitted). That changed one day before the site visit.

> Despite the imposition of the July 10, 2018 court-ordered deadline, by which the People were to inform the Court of the date certain for the site visit, the People did not respond until July 18, 2018. On that date, Attorney Quincy G. McRae, Chief of the Criminal Division, filed an Informational Motion, on behalf of the People, notifying the Court that it was unable to meet the Court's deadline outlined in its July 16, 2018 Order. Attorney McRae indicated in that filing that "undersigned Counsel *will discuss all outstanding issues with Atty. Tolud* on instant date and provide the Court with the information requested in its July 16, 2018 Order, ie location and date of the Court's site visit by July 16, 2018." Subsequently, on July 25, 2018, Attorney McRae, on behalf of the People, filed another Informational Motion informing the Court "that all of the Attorneys involved in the above referenced matter confirmed that they are available for August 9, 2018. The request is made for this Honorable Court to set the time for the Judicial Site visit, whereby we can bring this site inspection to a close." The Court, thereafter, officially scheduled the site visit for August 9, 2018, at 10:00 a.m. Despite having knowledge since July 5, 2018, that a site visit would be conducted, and despite making arrangements with defense counsel and confirming with the Court on July 25, 2018, that August 9, 2018 would be the date for the site visit, the People [through Attorney Ponteen purportedly on behalf of Attorney McRae] filed an Objection to Judicial Site Visit on the eve of the date set for the site visit.

*Id.* at 3 (footnotes, ellipsis, citations, and paragraph breaks omitted). The Court proceeded with the site visit and reduced to writing its reasons for overruling the objection.

¶5      Because the heart of this case is about computers, servers, printers, and other hardware equipment to print REAL IDs and the compatible software, and because the Defendants had asked to inspect and obtain copies of the tangible and intangible items within the Government's control, the Court ordered the People to clone the servers and provide copies of the cloned servers to the Defendants. The deadline to clone the servers was August 31, 2018. On the due date, Attorney McLean filed a motion for an extension of time, detailing the Department's efforts including coordination efforts between Assistant Bynum and agents with the Federal Bureau of Investigation ("FBI"). Attorney McLean represented that the FBI anticipated travelling to the Territory in September or October 2018, that cloning the servers would take a week, and that making copies of the cloned servers for the Defendants would take another two weeks after that, but the forensic analysis would take between six and twelve months to complete. The Court granted the People's

request and held a status conference on October 9, 2018, after which the People were ordered to notify the Court in writing how they intended to proceed. By now the Defendants had moved to dismiss for lack of a speedy trial.

¶6      On October 19, 2018, the People moved to continue the December 2018 trial date, specifically to ensure that the People have

> adequate time to provide the defendants with the best cloning and forensic analysis in this case, by the FBI, in protection of the defendants' right to a fair trial, under state and federal law, and to ensure that the defense is equipped with the evidence required for the zealous and adequate representation of the defendants in this case.

(Pl.'s Mot. to Continue Jury Trial Date 3, filed Oct. 19, 2018.) The Court found good cause to grant the motion because

> [b]ased on the representations made by the People's counsel, there is a possibility that the information contained on the servers may contain *Brady* material. Thus, the People cannot proceed on those counts directly relating to the servers until the information has been disclosed to the defense. Furthermore, if there is exculpatory evidence contained in the servers, the defense has indicated that any testimony pertaining to prosecution witnesses on those charges that have no direct connection to any server evidence may be subject to impeachment. Thus, there is a probability that a forensic analysis on those servers would contain [*Brady*] material and exculpatory evidence pertaining to all of the counts charged in this case.

(Order 2, entered Dec. 6, 2018 (footnote omitted).) The Court cautioned that a continuance did not ensure that the charges were not subject to dismissal and scheduled a hearing on January 29, 2019 on Gilani's motion to dismiss. The Court further ordered the People to file a notice to advise how long it would take the FBI to complete the forensic analysis and provide a date certain when the People will be ready to proceed to trial.

¶7      Attorney McRae, on behalf of Attorney McLean, filed a notice on December 14, 2018, reiterating the 6-12 month deadline for the FBI to complete the forensic analysis, and advised that the People "will immediately inform the Court and all parties upon completion of the completed date." (Pl.'s Notice of Completion of Date of FBI Forensic Analysis 2, filed Dec. 14, 2018.) However, the notice failed to give a date when the People would be ready for trial. Accordingly, the Court ordered Attorney McLean to show cause in writing why she should not be held in contempt and scheduled the show cause hearing on the same day as the hearing on Giliani's motion to dismiss. In a second Order issued on December 14, 2018, the Court concluded that, if "the forensic analysis

would not be completed until sometime between June 5, 2019, and December 5, 2019 . . . [and] the defense w[ould] need at least three (3) months to adequately analyze the information," the cases would not "be ready to proceed to trial until March 5, 2020." (Order 1 n.1, entered Jan. 18, 2019.) Out of an abundance of caution, the Court rescheduled jury selection and trial for March 9, 2020. *See id.* at 1.

¶8     Attorney McLean did not appear at the January 29, 2019 show cause hearing. Attorney McRae appeared instead, represented that Attorney McLean was out on medical leave, and said he would assume responsibility for prosecuting these cases. The Court continued the show cause hearing without date as to Attorney McLean, heard argument on Gilani's motion to dismiss, denied it without prejudice, and directed Attorney McRae to file a report every two months regarding the status of the completion of the FBI's forensic analysis. The bench rulings were reduced to writing in a February 1, 2019 Order directed to Attorney McRae and Attorney McLean (even though she was on leave) and to defense counsel. That Order directed that "the People of the Virgin Islands shall, **every two months, beginning on February 15, 2019**, file with the Court, a notice on the status of the completion of the report on the forensic analysis of the servers . . . ." (Order 2, entered Feb. 1, 2019.) Attorney McRae filed the first status report, titled informational motion, one day early, on February 14, 2019. And two weeks later, not two months later, Attorney McLean filed a second status report. Ten months passed. No further status reports were filed.

¶9     Accordingly, the Court issued an Order, *sua sponte*, on January 10, 2020, to schedule a status conference on January 30, 2020. That Order was directed to Attorney McLean but not Attorney McRae. However, a subsequent order dated January 29, 2020, entered January 30, 2020, denying a motion for a continuance by Christian due to a conflict of counsel, was directed to Attorney McRae and emailed to him as a courtesy. Neither Attorney McLean nor Attorney McRae appeared at the January 30, 2020 status conference. Instead, Attorney Ponteen appeared but not formally as counsel. (That would come seven days later.) Instead, Attorney Ponteen was standing in for the People. And even though, according to him, he was not the prosecutor assigned to these cases, he nonetheless represented that the People would be ready for trial on March 9, 2020.[3] The Court and

---

[3] The Court notes documents submitted later by Attorney McRae show that Attorney Ponteen was copied on communications pertaining to these cases since at least March 2019.

counsel expressed their doubts, however. Since Attorney McLean failed to appear, and Attorney McLean and Attorney McRae failed to file the bimonthly status reports, the Court issued a Show Cause Order on January 30, 2020, entered January 31, 2020, directing both Attorney McRae and Attorney McLean to show cause in person on February 7, 2020, why they should not each be held in contempt for not filing the status reports. Attorney McLean was further ordered to show cause why she should not be held in contempt for not appearing. The December 29, 2018 show cause hearing, which had been continued because Attorney McLean was on medical leave, was also reinstated.

¶10     A copy of the Show Cause Order was emailed to counsel as a courtesy after it was signed but before it was entered, which prompted Attorney McRae, on January 30, 2020 at 4:41 p.m., to file a motion to withdraw as counsel and have "all correspondence directed to Department of Justice St. Croix's office." (Pl.'s Mot. to Withdraw as Counsel 1, filed Jan. 30, 2020.) At 4:46 p.m. on Wednesday, February 5, 2020, Attorney McRae filed a motion to reconsider and quash the Show Cause Order and a motion for leave to appear telephonically. Leave to appear telephonically was denied on February 6, 2020, the same day that Attorney McRae, through Solicitor General Pamela R. Tepper, filed an amended motion to reconsider and quash the Show Cause Order. Attorney McRae appeared personally and with the Solicitor General as counsel, at the show cause hearing. Attorney Ponteen also appeared as did the Defendants, personally and through counsel.[4] Attorney McLean did not appear. The Court was notified that she had resigned at the beginning of January 2020.[5] After hearing from all sides, the Court, from the bench, found Attorney McRae in civil contempt and fined him $250.00. Attorney McRae, individually, immediately moved for reconsideration, asking that the Court instead find the People of the Virgin Islands in contempt rather than him. The Court took Attorney McRae's reconsideration request under advisement.

## II.    DISCUSSION

¶11     "'The Superior Court has both statutory and inherent power to compel obedience to its orders by way of contempt.'" *In re: Meade*, 63 V.I. at 684 (brackets and citation omitted). At the outset, the Court informed Attorney McRae that the Court had no intent to hold him in criminal

---

[4] Gilani was allowed to participate telephonically.

[5] Because Attorney McLean was not present to defend herself, having relocated to the mainland, the Court did not address any matters pertaining to whether she should be held in contempt.

contempt.

> "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."

*Id.* (citation omitted). Civil contempt sanctions can serve to vindicate the dignity and authority of the court and may be imposed to compensate the court rather than punish the contemnor. *See id.* at 686 ("[I]t is well-established that a court may hold an individual in civil contempt for past misconduct if the purpose is to compensate rather than to punish . . . .").

¶12    Attorney McRae offered several reasons why he should not be held in civil contempt. First, his supervisor, Carol Thomas-Jacobs, Esq, in her former capacity as Acting Attorney General, had transferred the "BIZVI cases" to the St. Croix office for further handling. His reconsideration motion corroborates his belief in that, sometime after he and Attorney McLean filed their respective status updates in February and March 2019, respectively,

> this matter was reassigned to the St. Croix Office. Specifically [on] or about March 28, 2019, Ms. Laverne Callwood, the Executive Officer for the Bureau of Investigations/White Collar Crime Division, emailed Chief Deputy Ponteen and stated the following: "I have been instructed by Atty. McRae to forward the BIZVI Case to be handled by the DOJ ST. Croix Office.

(Pl.s' Mot. to Recons. & Quash Its Order to Show Cause 2, filed Feb. 5, 2020.) To his mind, the transfer absolved him of all further responsibilities to the Court and to the People regarding these cases. Second, Ms. Callwood had emailed a court clerk in the St. Croix Division of the Superior Court on April 26, 2019, to advise her that for the BIZVI cases, "all correspondence – Orders, motions, etc. should be forwarded to the Department of Justice in St. Croix." *Id.* Third, whenever defense counsel contacted the People, either though Attorney Tolud and Attorney McLean, Ms. Callwood replied and advised them that the cases had been transferred to the St. Croix Office. Fourth, *In re: Najawicz*, 52 V.I. 311 (2009), and *In re: Joseph*, 65 V.I. 217 (2016), preclude him from being held in contempt since he genuinely believed that he was no longer counsel of record once the Acting Attorney General transferred the cases. And lastly, the appearances of later prosecutors in these cases superseded his appearance, effectively withdrawing him from these cases. The Court was unpersuaded.

¶13    *Najawicz* is not on point with this case. *Najawicz* was a consolidated appeal filed by a criminal defendant and his attorneys. The Virgin Islands Supreme Court dismissed the portion of the appeal

alleging civil contempt against the attorneys for lack of jurisdiction. *See* 55 V.I. at 327 ("'Civil contempt becomes appealable only when the contemnor has refused to comply with the remedial order and the court has exercised its authority either to punish or to coerce compliance.'" (citation omitted)). The attorneys had not been held in contempt; instead, they were warned they could be if they failed to comply with a court order. And while the Supreme Court did reverse the civil contempt finding as to the criminal defendant, *see id.* at 349, the reversal stemmed from the ambiguity of the order the contemnor supposedly failed to comply with. *See id.* at 341-42.

¶14    Unlike *Najawicz*, the February 1, 2019 Order was not ambiguous. It directed the People to file a report regarding the status of the FBI's forensic analysis every two months. Attorney McRae was present in court on January 29, 2019 when the Court directed the People to file bimonthly status reports. He received a copy of the February 1, 2019 Order, memorializing the January 29, 2019 bench ruling, And he responded to that Order by filing the first status report on February 14, 2019. Attorney McLean filed the second status report on March 3, 2019. No status reports were filed in April, June, August, October, or December of 2019. There is no dispute that the February 1, 2019 Order was clear and unambiguous, and Attorney McRae's noncompliance is clear and convincing.

¶15    Likewise, *Joseph* is also not on point. *Joseph* involved a collateral order appointing the Chief Public Defender to represent an indigent criminal defendant. The Chief Public Defender appealed and challenged the authority of the Judiciary to decide which public defender is assigned to a case. The Virgin Islands Supreme Court reversed, holding that "the legislature empowered the court[s] to appoint the *Office* of the Territorial Public Defender to represent indigent defendants . . . ." 65 V.I. at 227-28. "With the exception of indigency determinations, the statutes simply do not authorize the court to be involved in the managerial decisions of the Office of the Territorial Public Defender, which includes case assignments to specific attorneys in its employ," the Court explained. *Id.* at 228.

¶16    Unlike *Joseph*, this Court is not endeavoring to keep Attorney McRae on these cases or prevent him from withdrawing. The Virgin Islands Judiciary "cannot compel the Governor to retain a particular assistant attorney general or refuse to allow an assistant attorney general to withdraw her or his representation." *Joseph v. Pub. Emples. Rels. Bd.*, 68 V.I. 425, 429 (Super. Ct. 2018). In other words, just as the separation of powers doctrine bars the courts from selecting a specific public defender to represent a defendant, the separation of powers doctrine also precludes the courts from

selecting a specific prosecutor to prosecute the defendant. *Accord id.* The difference here is that Attorney McRae has been involved in these cases from their inception, filing the petition for arrest warrants and the motions to keep the warrants under seal. He also filed a notice to formally enter his appearance. And most importantly, he never withdrew that appearance. *But see id.* at 430 (construing motion filed by assistant attorney general to withdraw as notice of withdrawal). Attorneys appear by notice and should also "disappear" by notice.

¶17     And this is the crux of the issue here. Attorney McRae never informed *the Court* that he was no longer assigned to these cases or that the cases had been transferred to the St. Croix Office. He implies that the Court did have notice, however. But an email from an office assistant to a court clerk—one that did not reference the defendants by name or the cases by number—does not constitute notice that an attorney has withdrawn his appearance from a case. Paralegals and office assistants are not attorneys and do not represent parties. They may prepare court documents and bring or transmit those documents to court. But they cannot file papers in cases. The email from Ms. Callwood does not constitute notice to the court that Attorney McRae is no longer assigned to these cases.

¶18     Attorney McRae's assertion that his appearance was superseded when other attorneys appeared after him is rejected. But following Attorney McRae's own logic, his appearance in these cases was withdrawn on August 8, 2018, when Attorney McLean filed a notice of appearance. So, if that is correct, then he had no authority to appear at the January 29, 2019 hearing or to file any other papers in this case subsequently. But the reality is that multiple attorneys do appear in the same case on behalf of the same party either as co-counsel or a junior associate, especially in complex cases. "Without doubt there are complex cases that demand more than one prosecutor." *State ex rel. Johnson v. Robinson*, 251 S.E.2d 505, 508-09 (W. Va. 1979). And "[d]ecisions about indictment or trial prosecution will often involve more than one prosecutor within an office." *Van de Kamp v. Goldstein*, 555 U.S. 335, 345 (2009). But no court can direct that a particular prosecutor be assigned to a case. "Assistant attorneys general are appointed by the Governor of the Virgin Islands and may be removed by the Governor of the Virgin Islands at any time." *Joseph*, 68 V.I. at 428. Once a prosecutor enters his appearance, however, the attorney remains associated with the case and subject to the court's contempt power until he withdraws, or another prosecutor enters

her appearance and substitutes in his place. This Court joins the *Joseph* court and "holds that assistant attorneys general withdrawing their representation shall designate substitute counsel in their notices of withdrawal." *Id.* at 431.

¶19    Whether an assistant attorney general resigns, retires, or his employment is terminated, that individual, as an officer of the court and an attorney subject to the rules of professional responsibility, still retains the responsibility to file a notice of withdrawal. "[A]n assistant attorney general does not need court approval to withdraw — because counsel of record is the Virgin Islands Department of Justice . . . ." *Id.* at 430. But the assistant attorney general still must give notice to the Court and opposing counsel. And it is this broad point that Attorney McRae fails to appreciate. "[T]he administration of justice is inherently disrupted when an attorney for one party fails to attend a mandatory court proceeding." *In re: Meade,* 63 V.I. at 686. Attorney McRae's contention that the directive of his superiors to transfer these cases to the St. Croix Office absolved him of all further responsibility is rejected. The administration of justice would grind to a halt if the Virgin Islands Department of Justice could effectively evade all deadlines and court orders by simply moving the case from one attorney to another and, once reassigned, the prior attorney retains no responsibility to the court. This Court is unwilling to hold that it has the authority to prevent an attorney still employed with the Department of Justice from withdrawing his representation. *Cf. Joseph,* 68 V.I. at 429-30 (noting that the power to grant a motion to withdraw implies the power to deny it). The Supreme Court may conclude that Virgin Islands courts have such authority. But this Court does hold that the bare minimum a lawyer with the Virgin Islands Department of Justice must do is notify the Court if he or she is no longer assigned to a case or employed by the Department.

¶20    Several months passed without status updates from the People, and the March 2020 trial deadline was approaching. Accordingly, the Court scheduled the January 30, 2020 hearing. After Attorney Ponteen appeared, but not formally, and clearly was not briefed on the status of these cases, and could not meaningfully report on their progress, the Court scheduled the February 7, 2020 show cause hearing. Neither of those hearings had to happen if Attorney McRae had notified the Court that he was no longer assigned to these cases. Had he done so, and no one from the Department of Justice appeared in his place, it would have been incumbent upon the Court to act at that point. Instead the Court was left in the dark. And what is further troubling is that, Attorney

McRae did not take any steps, after his superior directed him to transfer these cases, to brief prosecutors on St. Croix, to inform them of the People's continuing obligation under the February 1, 2019 Order to file bimonthly status reports, or to inform the Court and defense counsel when the FBI's forensic analysis was completed. And the show cause hearing revealed that the FBI had completed their analysis several months ago. Had Attorney McRae attempted to comply with the February 1, 2019 Order, the Court might have found that he "diligently attempted to comply in a reasonable manner," *In re: Meade*, 63 V.I. at 685, notwithstanding that his supervisor had instructed him to transfer these cases. But Attorney McRae presented no such evidence and conceded that he took no such steps.

¶21    A Virgin Islands court clearly "can access its contempt powers. In addition, where the prosecutors' conduct violates an applicable ethical rule, the court can 'call the prosecutors' conduct to the attention of the appropriate disciplinary authorities.'" *People v. Rodriguez*, S. Ct. Crim. No. 2009-028, 2010 V.I. Supreme LEXIS 15, *22 (V.I. Apr. 14, 2010); *accord United States v. Sarcinelli*, 667 F.2d 5, 6 (5th Cir. 1982) ("On this record, the district judge could have cited the prosecutor for civil contempt and put her in jail, if that would have been necessary to coerce her into obeying the magistrate's discovery orders. The court could have called the United States Attorney to task as well; for, after all, he bears the ultimate responsibility for ensuring that his lawyers conduct themselves in conformance with the law."). For the reasons given from the bench, as explained further herein, the Court found the February 1, 2019 Order clear, the proof of Attorney McRae's noncompliance clear and convincing, and no attempt to comply with it. Therefore, the Court held Attorney McRae in civil contempt and ordered him to pay $250.00 to compensate the Superior Court.

¶22    Attorney McRae immediately moved the Court to reconsider the contempt finding and find the People of the Virgin Islands in contempt instead of him individually. And the Court initially expressed its reluctance, explaining that institutions act through individuals and behavior changes when individuals are held accountable. But the Court took it under advisement. Upon further reflection the Court does note that Attorney McRae is not alone here. Attorney Tolud never formally withdrew from these cases or notified the Court that he was no longer assigned to them. And Attorney McLean resigned from the Virgin Islands Department of Justice without withdrawing or notifying the Court that she is no longer associated with the Department. None of this is acceptable

because it impacts on the trial court's ability to manage its caseload. *Accord Greene v. V.I. Water & Power Auth.*, 67 V.I. 727, 740 (2017). It cannot be acceptable practice in the Virgin Islands for attorneys to come and go from cases as they please and be held to lesser standard because they are public attorneys not private attorneys. To be clear, public attorneys are not immune from a court's contempt power. Instead, Virgin Islands courts can

> endeavor[] to conduct contempt proceedings against the Attorney General of the Virgin Islands, the chief of the criminal division of the Department of Justice, and the individual assistant attorney general who was the People's last counsel of record. . . . If any of these three individuals failed to comply with the court's order, the offending individual would be held in contempt of court and appropriate sanctions imposed.

*Rodriguez*, 2010 V.I. Supreme LEXIS 15 at *53-53 (Swan, J., concurring in part and dissenting in part). More importantly, the attorneys involved here are supervisory attorneys. Compliance with court orders would mean nothing if a supervisory attorney could just transfer a case to another attorney. Supervisory attorneys must be held to a higher standard than "rank and file" attorneys.

¶23    Orders are directed to attorneys when parties appear through counsel. The Virgin Islands Department of Justice represents the People of the Virgin Islands and the People of the Virgin Islands can only act through individual attorneys. "The People" must be accountable when orders issue.   The Court rejects the implication offered by Attorney McRae that individual assistant attorneys general should not be held in contempt but instead the Office of the Attorney General should. *Rodriguez* undermines that assertion. Based on experience and anecdotal reports, *accord In re: Holcombe*, 63 V.I. 800, 838 n.25 (2015), this Court finds the lack of notice regarding the succession of attorneys within the Virgin Islands Department of Justice to be a recurring problem. *Cf. Prentice v. People*, 68 V.I. 458, 462 n.1 (Super. Ct. App. Div. 2018) ("Regrettably, the Virgin Islands Department of Justice has had a pattern of abandoning criminal and petty offense cases appealed to the Appellate Division in the District of St Croix." (collecting cases)); *see also, e.g., Joseph*, 68 V.I. at 403 ("Courts should not have to order the Virgin Islands Department of Justice to have counsel enter an appearance on behalf of the Government of the Virgin Islands in a civil case or on behalf of the People of the Virgin Islands in a criminal case."); *In re: Wilson*, SX-2009-CR-544, 2014 V.I. LEXIS 129, *2 & n.2 (V.I. Super. Ct. Apr. 11, 2014) (noting that substitute counsel for the People had not appeared on remand and the assigned attorney resigned while the case was on appeal). Justice cannot be administered in this fashion. And the fact a Superior Court judge felt compelled to weigh

in on a similar issue, albeit for assistant attorneys general assigned to civil cases, does not go unnoticed. *Cf. Joseph*, 68 V.I. at 427 (over a year passed after motion to withdraw filed and no successor government attorney had appeared yet).

¶24    Accordingly, considering that Attorney McRae genuinely believed that he was no longer counsel of record on this case, and further considering that Attorney McRae and Attorney Ponteen were the Chiefs of the Criminal Divisions, St. Thomas and St. Croix Offices, respectively, and lastly, considering that Attorney McRae moved for reconsideration and asked that the People be held in contempt instead of him, the Court will grant the motion to reconsider and hold the $250.00 sanction in abeyance, ***provided*** that Attorney McRae, as a supervisory attorney with the Virgin Islands Department of Justice, works with the other supervisors within the Department of Justice to develop and implement a formal plan, which may take the form of a recommendation to the Advisory Committee on Rules to propose a rule to the Supreme Court of the Virgin Islands for promulgation, *accord Joseph*, 68 V.I. at 431, to ensure what occurred here—several public attorneys "disappeared" without notice and without designating successor counsel—does not happen again. *Cf. Rodriguez*, 2010 V.I. Supreme LEXIS 15 *22 ("If a court is concerned about future compliance . . . it may not only grant a continuance, but may access its contempt powers . . . [or] 'call the prosecutors' conduct to the attention of the appropriate disciplinary authorities.'" (citation omitted)). *Accord People v. Aleem*, 149 P.3d 765, 785 (Colo. 2007) ("A court's duty to invoke the contempt power with caution and self-restraint includes a duty to consider less drastic alternatives to contempt sanctions." (citations omitted)); *Singh v. Capital Univ. Law & Graduate Ctr.*, No. 00-3244, 2000 U.S. App. LEXIS 29134, at *2-3 (6th Cir. Nov. 7, 2000) (affirming alternative sanction to perform community service in lieu of paying fine).

### III.    CONCLUSION

¶25    Accordingly, for the reason stated on the bench and as explained above, the Court found Attorney McRae in contempt and ordered him to pay $250.00 to compensate the Superior Court for the wasted time holding unnecessary hearings. Attorney McRae moved for reconsideration, however. Having considered that request, the Court will grant Attorney McRae's motion and hold the sanction in abeyance, provided that he confers with the Attorney General and other supervisory attorneys and stakeholders within the Virgin Islands Department of Justice and come up with a plan

*In re: McRae / People v. Browne  People v. Christian/ People v. Gilani*
SX-17-CR-174 / SX-17-CR-175 / SX-17-CR-189
**MEMORANDUM OPINION**
Page 15 of 15

2020 VI Super 26

to ensure proper notice to the courts when assistant attorneys general withdraw, resign, retire, or are assigned to work on other matters. Leaving the courts in the dark interferes with the administration of justice. Should Attorney McRae decline the alternative relief, then he must pay the fine.

**Date:** February 14, 2020

**ROBERT A. MOLLOY**
Judge of the Superior Court

**ATTEST:**
TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk
Dated: _____